Giles Coulter BERRY, Petitioner,

v.

Elna Hettie BERRY, Respondent.

No. C–1572.

Supreme Court of Texas.

March 9, 1983.

Ernest T. Foree, Dallas, for petitioner.

Dave Haigler, Dallas, for respondent.

KILGARLIN, Justice.

The sole question presented for consideration is the value of Elna Berry's interest in the retirement benefits of her ex-husband, Giles Berry. The judgment of the trial court awarded Mrs. Berry one-half of such benefits as would have existed at the time of divorce. The court of appeals reversed and held that she was entitled to receive 34.21% of the retirement benefits actually received. 636 S.W.2d 865. We reverse the judgment of the court of appeals and affirm the trial court's judgment.

The parties were married on November 11, 1939. On May 22, 1940, Mr. Berry was employed by Southwestern Bell Telephone Company. The couple was divorced on September 13, 1966. The decree of divorce was silent as to the distribution of retirement benefits. Mr. Berry continued working for Southwestern Bell until his retirement on July 8, 1978. After his retirement, Mrs. Berry brought this suit to collect her share of the retirement benefits.

Trial was to the court. Evidence adduced at trial, principally from Marshall Kemp, District Staff Manager, Employee Benefits, Southwestern Bell, revealed that had Mr. Berry terminated his employment at the time of divorce, he would not have been entitled to any retirement benefits because he was not yet sixty years of age, which was a prerequisite under the non-contributory retirement plan. Further, the evidence showed that total length of service under the plan is used as a multiplier in order to reach the amount of benefits payable. An additional factor in computation of benefits is the highest salary paid an employee over a consecutive sixty-month period. Mr. Berry's highest sixty months were his last five years of employment, and his average annual pay during that time was $21,184.67. Kemp testified that as of the date of trial, Giles Berry was being paid retirement benefits in the amount of $946.34 per month. He further testified

that assuming Mr. Berry had been eligible to retire as of September 13, 1966, retirement benefits would have amounted to $221.21 per month. Based upon this limited financial data, the trial court rendered judgment that Mrs. Berry was entitled to receive $110.60 per month from Mr. Berry, after the date of judgment, and $3,207.40, representing $110.60 per month from the date of Mr. Berry's retirement until the date of judgment, December 30, 1980.

The court of appeals reversed, reasoning that because Elna Hettie Berry had been married to Giles Berry twenty-six out of his thirty-eight years of employment with Southwestern Bell, she was thereby entitled to be awarded 34.21% (½ × 26/38) of Giles Berry's retirement benefits. Accordingly, the court of appeals rendered judgment for Mrs. Berry in the amount of $6,702.20 for her share of accrued benefits through April, 1980 [1] and further rendered judgment that after that date Mrs. Berry was to receive 34.21% of all retirement benefits received by Mr. Berry.

The court of appeals reached its judgment by following *Bankston v. Taft,* 612 S.W.2d 216 (Tex.Civ.App.—Beaumont 1981, writ dism'd). *Bankston* and *Disbrow v. Thibodeaux,* 596 S.W.2d 174 (Tex.Civ.App. —Houston [14th Dist.] 1980, no writ), both follow the formula for distribution of retirement benefits as set out in *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977). Both courts of appeals cases hold that the divorced wife's community interest in retirement benefits is based upon the amount of retirement benefits actually received subsequent to the date of their former spouses' retirement even though the parties were divorced prior to retirement. These courts, however, have read into *Taggart* issues which were not before this Court in that case. *Taggart* only held that the divorced wife "owned as her part of the community estate a share in the contingent right to military benefits even though that right had not matured at

the time of the divorce." *Id.* at 423. It is true that this Court did apply a formula based on the number of months in which marriage coincided with employment, divided by the number of months Taggart was in the Navy. We did not, however, determine whether the community's interest in retirement benefits should be valued as of the date of divorce, as opposed to the time the benefits were actually received. Thus, the courts of appeals' reliance on *Taggart* was misplaced.

In truth, this Court has already resolved the issue presented in this case. In *Herring v. Blakeley,* 385 S.W.2d 843 (Tex.1965), our Court stated:

> We have concluded that the employee's interest in both plans was community property, and that as of the date of the divorce, Ellen Davis Herring is entitled to one-half of the value of these plans....

*Id.* at 845. The foregoing was not mere obiter dicta as evidenced by the following language:

> We come now to the judgment to be entered in this case. Since there is no evidence of the value of James Herring's interest in the two plans on the date of the divorce, the cause is remanded to the trial court with instructions to ascertain such value and to award to Ellen Davis Herring one-half the value of James Herring's interest in both plans *as of August 2, 1960, the date of the divorce....*

*Id.* at 848 (emphasis in original). *See In re Marriage of Rister,* 512 S.W.2d 72 (Tex.Civ. App.—Amarillo 1974, no writ). In *Rister,* the issue of the value of retirement benefits was squarely before the court, and the opinion states:

> However, to the extent that the benefits do increase as a result of future increased earnings, the formula used by the trial court has the effect of awarding benefits accruing to appellant after the divorce from appellee.

1. The record fails to reveal the significance of April, 1980, for calculation purposes, but it is probably related to the trial date of May 16, 1980.

We hold that pension benefits accruing as compensation for services rendered after a divorce are not a part of the estate of the parties subject to division on divorce.

*Id.* at 74.

Retirement and pension benefits are a mode of employee compensation. *Lee v. Lee,* 112 Tex. 392, 403–04, 247 S.W. 828, 833 (1923). It is clear from the record in this case that twelve additional years of work following divorce, which included some twelve to fourteen pay raises, plus union contract negotiations for an improved benefits plan, brought about the increase in retirement benefits paid to Mr. Berry. These post-divorce increases cannot be awarded to Mrs. Berry, for to do so would invade Mr. Berry's separate property, which cannot be done. *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982).

Mrs. Berry argues, however, that it was not Mr. Berry's additional twelve years of employment that caused an increase in the retirement benefits, but rather the retirement benefit plan was merely keeping pace with inflationary trends. She offers no evidence to support this contention other than Mr. Berry's admission on cross-examination that he was aware that inflation has been high in the years following the parties' divorce. Mrs. Berry argues that it was not her burden to produce testimony on inflationary effects because under the holding of *Dessommes v. Dessommes,* 505 S.W.2d 673 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.) (hereinafter *Dessomes II*), the burden of producing evidence was on the ex-husband. In any event Mr. Berry met his burden through the testimony of Mr. Kemp. Further, we reject the concept of inflation as a factor for our consideration as it relates to the current value of retirement benefits.

We do not perceive *Dessommes II* as being in conflict with this opinion, for in that case a remand was ordered so that the former husband might prove what portion of the commingled retirement funds were attributable to contributions made since the divorce. If anything, the Dallas court opinion in *Dessommes II* is a precursor to our holding here. Unlike Mr. Berry, however, Mr. Dessommes, in the third trial, failed to make that proof required of him. The Texarkana court, therefore, awarded Mrs. Dessommes one-half of the retirement benefits as paid.[2]

Mr. Berry has cited to this Court the unpublished portion of the opinion in *Ryan v. Ryan,* 626 S.W.2d 103 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.). Part I of such opinion, 626 S.W.2d 103, is not applicable to this case. Part II, the unpublished portion of the opinion, is of no precedential value and should not be cited. Tex.R.Civ.P. 452.[3]

We are not to be understood as overruling *Taggart v. Taggart, supra,* or disapproving of its progeny, e.g., *Bankston v. Taft, supra; Disbrow v. Thibodeaux, supra; In the Matter of the Marriage of Gongwer,* 554 S.W.2d 49 (Tex.Civ.App.—Amarillo 1977, no writ), insofar as those opinions approve an apportionment formula for determining the *extent* of the community interest in retirement benefits. When the value of such benefits is in issue, however, the benefits are to be apportioned to the spouses based upon the value of the community's interest at the time of divorce. Accordingly, insofar as *Bankston v. Taft, supra,* and *Disbrow v. Thibodeaux, supra,* are in conflict with this opinion, they are disapproved.

There remains our disposition of this cause. As we are convinced that the opinion of the court of appeals in this case invades the separate property of Mr. Berry, the judgment of that court is reversed and the judgment of the trial court is affirmed.

---

**2.** 543 S.W.2d 165 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.).

**3.** Tex.R.Civ.P. 452 was amended August 15, 1982. New section (f) provides as follows:

"Citation of Unpublished Opinions. Unpublished opinions shall not be cited as authority by counsel or by a court."