**Henry J. DUNN, Appellant,**

v.

**Penelope DUNN, Appellee.**

**No. 04–84–00471–CV.**

Court of Appeals of Texas,
San Antonio.

Dec. 18, 1985.

Rehearing Denied Jan. 15, 1986.

Roger W. Wooldridge, San Antonio, for appellant.

Robert F. Estrada, San Antonio, for appellee.

Before CADENA, C.J., and TIJERINA and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from an order rendered in a post-divorce partition suit.

Appellant Henry Dunn and appellee Penelope Dunn were married in 1972 and divorced in 1983. The divorce decree awarded Penelope one-half of the proceeds from the Sale of "Duns Bar Gal," a horse owned by the couple, and "any and all other property" in her possession and control. Henry was awarded one-half the proceeds from the sale of "Duns Bar Gal" and all other property in his possession and control when the divorce decree was entered.

Up to the present time, Henry has maintained a job as a civil service employee, a GS–12 Step 5, for a total of 31 years, eleven of those years accumulating during his marriage to Penelope. Penelope introduced evidence showing that Henry had contributed $26,424.89 towards his retirement, $17,796.64 of that total accumulating during the parties' marriage. Penelope was also a civil servant and had accumulat-ed $6,157.27 in retirement benefits. Neither of the party's benefits were specifically mentioned in the divorce decree, which had been based upon a settlement agreement between Henry and Penelope, nor were the benefits mentioned in any settlement discussions prior to or after the divorce. Additionally, the couple owned two other horses, "Why Tag Along" and "Rondo's Rancher" and 12 head of cattle which were not mentioned in the divorce order. Henry sold the cattle before the divorce order was entered and deposited the check into his account shortly thereafter.

Penelope later filed a partition suit to divide Henry's retirement and claimed an interest in the proceeds from the 12 head of cattle and the two additional horses. Henry answered, alleging that the divorce decree was a final judgment and res judicata as to all of the issues raised by Penelope, and therefore could not be collaterally attacked. The court concluded that the livestock and retirement benefits had not been divided and entered an order dividing the property as follows: Penelope was awarded $1,875.00, which represented one-half the proceeds from the sale of the cattle. Henry was awarded all right, title and interest in "Rondo's Rancher" and "Why Tag Along," while "Duns Bar Gal" was to be sold and the proceeds split equally. Penelope was to recover 33.67% of Henry's civil service retirement if, as, and when received to be determined according to the current Federal Civil Service Retirement pay schedule for a GS–12 Step 5 in force at the time Henry retires, plus a proportionate share of all cost of living increases. Penelope's civil service retirement was also partitioned, but since this division was not complained of on appeal, we will not consider it in this decision.

Henry has perfected this appeal, challenging the judgment on several fronts. First, he claims that the trial court erred in partitioning the interest in the livestock and the retirement benefits, because such property was already awarded in the divorce decree through the "residuary clause," and is therefore barred by res

judicata. Second, he asserts that the trial court erred in awarding Penelope 33.67% of his retirement since the total community interest to be partitioned is only 35.48% of the accrued benefits and Penelope is entitled to only half of that percentage, or 17.605%. He further alleges that the court erred in computing Penelope's share based upon the schedule in force at the time of *retirement,* but rather should have considered the "present value" of the benefits.

It is well settled that community property not divided on divorce may later be partitioned, but the parties stand as tenants in common or as joint owners thereof. *Busby v. Busby,* 457 S.W.2d 551, 554 (Tex. 1970); *Yeo v. Yeo,* 581 S.W.2d 734, 736 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). It is also the law in Texas that a spouse has a community property interest in that portion of retirement benefits that his spouse earned during their marriage. *Valdez v. Ramirez,* 574 S.W.2d 748, 749 (Tex.1978). This is the case even though the benefits at the time of divorce are not matured and are not subject to possession at the time of divorce. *See Cearley v. Cearley,* 544 S.W.2d 661, 666 (Tex.1976). Therefore, if the retirement benefits and cattle were not disposed of in the divorce decree, they would be subject to the later property division by the court in the partition suit.

The material issue for our consideration, then, is whether the benefits and the livestock had already been partitioned by virtue of the "residuary clause" in the divorce decree, as Henry claims. We find that the proceeds from the sale of the cattle and the pension benefits were *not* included in the Dunn's original divorce decree and therefore were properly divided by the trial court. We conclude further that the two additional horses, "Why Tag Along" and "Rondo's Rancher" were in Henry's possession and control and were therefore his separate property by virtue of the residuary clause and were properly awarded to him.

Henry cites *Yeo v. Yeo* as controlling authority for the present case, based on its discussion of what constitutes "possession." In that case we stated that a suit to partition community property not disposed of in the original divorce decree does not constitute a collateral attack but is merely a suit brought by one tenant in common against another. *Yeo v. Yeo,* 581 S.W.2d 734, 736 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). The crucial issue in *Yeo,* as in the present case, centered around a residuary clause and whether it included unawarded military retirement benefits. The clause stated:

I, the said Doris B. Yeo, for the same consideration, have released remised and quit claimed ... unto the said Norman R. Yeo ... any separate property he may now have or acquire in the future and all other property of whatever nature, separate or community, in his possession or claimed by him.

*Yeo v. Yeo,* 581 S.W.2d at 737. Mr. Yeo claimed that his military retirement was in his "possession" at the time of divorce and was therefore not subject to partition in the later suit brought by his ex-wife. *Id.* at 737. We concluded that "possession" could not properly be interpreted as including such intangible contract rights as future military retirement benefits. *Id.* at 738. "Possession," we stated, is ordinarily understood as referring to property over which the parties have physical control or at least a power of immediate enjoyment and disposition. *Yeo v. Yeo,* 581 S.W.2d at 738; *Dessommes v. Dessommes,* 505 S.W.2d 673, 676 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.).

■ Henry argues that his retirement falls under the *Yeo* definition of "possession" since by federal statute he has the right to withdraw his retirement benefits should he terminate his employment. He claims that this constitutes a power of "immediate enjoyment and disposition" as set forth in *Yeo.* We disagree. The court in *Dessommes v. Dessommes* specifically rejected a similar contention and stated that the right to change death beneficiaries, or to determine the time of retirement, and other control over one's equitable interest

to such benefits was not the type of "possession" necessary to fall under a residuary clause such as the one in the present case. *See Dessommes v. Dessommes,* 505 S.W.2d 673, 676 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). Henry's right to terminate his employment and to claim his retirement benefits is the type of "intangible right" contemplated in *Yeo* and *Dessommes* and the trial court therefore properly characterized it as falling outside of the residuary clause.

We overrule Henry's third point of error and find that the retirement benefits were not included in the residuary clause.

■ Henry makes a similar claim as to the proceeds from the sale of the parties' 12 head of cattle. He asserts that at the time of divorce, possession and control of the cattle had passed to his buyer. Since he had the buyer's check in his possession at the time of divorce, and the check was payable to him alone, Henry claims that the proceeds fall under the residuary clause as his separate property. We disagree. It is clear that the cattle were not in his possession or control. Henry cites no authority for his claim that possessing the check was tantamount to possession of the cattle themselves, and we are unable to locate such a decision. Based on the foregoing discussion, we need not consider Penelope's allegations concerning fraud in the sale of the cattle since we have held the division of the proceeds to be proper and that she is entitled to one-half of such proceeds. Henry's first point of error is overruled.

■ In his second point of error, Henry argues that the trial court erred in entering a judgment partitioning the interest in all three horses. We agree that "Rondo's Rancher" and "Why Tag Along" were properly awarded to him and affirm that portion of the judgment, especially since Penelope conceded that there was really no dispute as to these two animals. We also agree with the trial court's decree specifically ordering that "Duns Bar Gal" was to be sold and the proceeds split, in spite of Henry's argument that this issue was barred by res judicata. The partition de-

cree merely reiterates the order entered in the divorce action. While a court is without authority to change provisions in a final judgment relating to property adjudication in a divorce, it does have authority to make orders necessary to carry that judgment into full effect. *See Schwartz v. Jefferson,* 520 S.W.2d 881, 888 (Tex.1975). This is true as long as the subsequent order is consistent with the provisions and finality of the original judgment and imposes no new obligations. *McGehee v. Epley,* 661 S.W.2d 924, 925 (Tex.1983). The partition order reiterates that "Duns Bar Gal" be sold and further states that Henry be charged with the sale and upkeep of the horse. We do not view the "upkeep" order as imposing a new obligation, since the record reflects that Henry has consistently boarded the horse, and it was apparently understood that this would continue at the time of the agreed divorce settlement. Henry's second point of error is therefore overruled.

■ In his final points of error, Henry challenges the formula used by the trial court in figuring Penelope's interest in his retirement benefits. It is well established that retirement benefits accruing during marriage constitute community property, and on dissolution of the marriage by divorce, the parties become tenants in common where the decree fails to divide such benefits. *Busby v. Busby,* 457 S.W.2d 551, 554 (Tex.1970); *Yeo v. Yeo,* 581 S.W.2d 734, 736 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). The focus of our discussion, then, is whether the trial court properly computed Penelope's share of Henry's retirement. We agree that the benefits were subject to partition as discussed above, but find that the court applied an incorrect formula in computing Penelope's share of such benefits.

The trial court found that Penelope was entitled to 33.67% of Henry's Civil Service retirement if, as and when received, to be determined according to the GS–12 Step 5 pay schedule for one with 31 years of service, in force at the time Henry retires. The court also ordered that a proportionate

share of "cost of living increases" be included in the computation and further stated that if Henry were to receive a lump sum payment because of termination or death, Penelope would be immediately entitled to $8,878.32 (½ of the amount actually contributed to the fund during marriage). The trial court apparently arrived at the 33.67% based upon ½ of the amount the government had deducted from Henry's salary during the couple's 11 year marriage.

In *Berry v. Berry* the Texas Supreme Court set forth the proper formula for computing the extent of the community interest in retirement benefits and in figuring the *value* of such benefits. The Court stated that the *Taggart* formula applies in computing the *extent* of community interest in retirement benefits and is computed as follows:

$$\text{Community interest} = \frac{\text{NUMBER OF MONTH (YEARS) WORKING WHILE MARRIED}}{\text{NUMBER OF MONTH (YEARS) WORKING TOWARD RETIREMENT}}$$

*Taggart v. Taggart,* 552 S.W.2d 422, 424 (Tex.1977)

In *Berry,* the Court specifically upheld the validity of the *Taggart* apportionment formula and then considered the issue of computing *value* of retirement benefits. It held that such value must be based on the community's interest at the time of divorce and *not* according to the value at the time of retirement. To do so would invade the separate estate of the working spouse. *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex. 1983). The Court further rejected the concept of inflation as a factor for consideration in computing current value of retirement benefits. *Id.*

In *Rankin v. Bateman,* we followed *Berry* in computing military retirement benefits. We held that the division must be based on the rank held by the prospective retiree at the time of divorce rather than upon the rank attained subsequent to divorce. *Rankin v. Bateman,* 686 S.W.2d 707, 710 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

We conclude that the present case should be governed by the same principles. Pene-

lope should receive out of any benefits Henry receives one-half of the amount produced when the "Taggart fraction" is multiplied by the benefit payment—based on a GS–12 Step 5 pay schedule for a civil servant with 31 years of service (Henry's "rank" at divorce). Since Henry is still working, such a division will occur if, as and when he collects retirement benefits. We reject Penelope's claim that cost of living increases and inflation should be included in her community share of Henry's retirement, pursuant to *Berry.*

We reform the judgment of the trial court to reflect the *Taggart* and *Berry* formulas discussed above, and affirm it in all other respects. We decline to review Henry's point of error concerning the trial court's failure to file findings of fact, since it is not material to our holding.