Ex Parte Eddie Anthony **LUCHER.**

No. 01–86–0890–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1987.

Rehearing Denied April 30, 1987.

James S. Bruckner, Houston, for relator.

Judy L. Przyborski, Achilles & Associates, Houston, for respondent.

Before EVANS, C.J., and DUGGAN and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

The central issue in this habeas corpus proceeding is whether a 1978 divorce decree, which divided relator's Railroad Retirement benefits as part of the marital estate, should be given effect under the doctrine of res judicata. We hold that the doctrine of res judicata does apply and that the trial court properly determined that the terms of the divorce decree are enforceable by contempt proceedings.

The divorce decree, effecting a division of the marital estate of relator and respondent, was entered on February 3, 1978. The decree required that relator pay to respondent 25% of the gross amount of each retirement check that he might receive from the Railroad Retirement Board. In January 1986, relator began receiving monthly Railroad Retirement checks in the amount of $954.88, but he failed to pay the required percentage of those payments to respondent. Respondent then filed a contempt proceeding to enforce the obligation imposed by the court's decree, and after several appearances on the motion, the parties' counsel filed briefs on the issue of relator's legal responsibility to make the payments. A final hearing before the court was held on October 15, 1986, at which time the trial court ruled that relator was legally obligated to make the required payments, and on respondent's motion, the court held relator in contempt of the terms of the divorce decree. In its ruling, the court found that relator was in arrears of such payments in the total amount of $1301.06, and ordered that relator be confined in the Harris County Jail until he paid the amount of the arrearage, plus costs and attorney's fees. The court suspended the order of commitment until December 2, 1986, in order to permit relator's compliance with its order. On that date, the court found that relator had not complied with its order, and ordered relator committed to the Harris County Jail. Relator then initiated this proceeding, and on posting of bond, he was released from jail pending this Court's review.

In 1979, after the divorce decree in question had become final, the United States Supreme Court held that the provisions of the Railroad Retirement Act, 45 U.S.C. sec. 231m, constituted a federal preemption of the field, and that Railroad Retirement benefits were *not* subject to division by a state court as property upon divorce. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). Later that same year, the Texas Supreme Court, following the holding in *Hisquierdo*, held that Railroad Retirement benefits were not to be treated as "property" for purposes of division upon divorce. *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979).

Relator relies on the holdings in *Hisquierdo* and *Eichelberger*, and he also cites a 1983 amendment to Section 231m of the Railroad Retirement Act, which provides:

This section shall not operate to prohibit the characterization or treatment of that portion of an annuity under this subchapter which is not computed under section 231b(a), 231c(a), or 231c(f) of this title, or any portion of a supplemental annuity under this subchapter, as community property for the purposes of, or property subject to, distribution in accordance with a court decree of divorce, annulment, or legal separation or the terms of any court-approved property settlement incident to any such court decree. The Board shall make payments of such portions in accordance with any such characterization or treatment or any such decree of settlement.

45 U.S.C.A., sec. 231m (b)(2) (West Supp. 1986).

Relator argues that by this amendment, Congress expressed its clear intent to retain "Tier I" annuities, which provide benefits equivalent to those under Social Security, under the preemptive right of the United States, and to exclude the supplemental benefits under "Tier II" and "windfall" from such preemption. Thus, relator argues that only "Tier II" benefits could be partitioned as community property, and that $613 of his monthly retirement benefits constituted "Tier I" annuities, which were not subject to division. Relator further argues that because the "Tier I" benefits were not, under the terms of the decree, separated from the supplemental "Tier II" benefits, the decree is completely void.

■ In 1978, when the parties were divorced, Texas courts followed the Texas Supreme Court's ruling in *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976). In that case, the Texas Supreme Court held that retirement benefits earned during marriage constituted a community asset that was subject to division on divorce, even though the rights were contingent and not yet matured or vested. The question then, is whether the later ruling of the United States Supreme Court in *Hisquierdo* should be applied retroactively so as to invalidate the 1978 divorce decree.

There is nothing in the holding in *Hisquierdo* that suggests that the United States Supreme Court intended to invalidate, or otherwise render unenforceable, a prior valid state court judgment. Nor does case law support the retroactive application of the *Hisquierdo* ruling. Indeed, Texas law is to the contrary.

A similar issue was decided contrary to relator's position in *Segrest v. Segrest*, 649 S.W.2d 610 (Tex.1983) *cert. denied*, 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983). In that case, the question was whether the United State Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that Military Retirement benefits were not divisible as community property by a state court, should be given retroactive application to invalidate a divorce decree, which was final prior to the announcement of the *McCarty* decision. The Texas Supreme Court in *Segrest* held that *McCarty* did not require retroactive application. The court also stated that even though the divorce decree might be considered erroneous or voidable, it was not void, and the doctrine of res judicata prevented readjudication of the issue.

Relator argues that the 1983 amendment contains language, not present in the Military Retirement Act, which reflects Congressional intent that the preemptive right of the United States should be applied retroactively. In support of this position, relator cites *Richard v. Richard*, 659 S.W.2d 746, 748 (Tex.App.—Tyler 1983, no writ), which involved social security benefits; *Ex parte Johnson*, 591 S.W.2d 453 (Tex.1979), which involved Veterans Administration Disability benefits, and *Kamel v. Kamel*, 721 S.W.2d 450 (Tex.App.—Tyler, 1986, no writ), which involved Railroad Retirement benefits. We find these cases are neither persuasive nor controlling, because none involved the issue of whether a federal court ruling should be applied retroactively to invalidate a prior valid state court judgment.

In *Chevron v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the United States Supreme Court set out a three-prong

test for a court to determine whether and to what extent a judicially modified or abrogated rule of law should be given retroactive effect. In making such a determination, the court should consider: (1) whether the holding in question "decided an issue of first impression whose resolution was not clearly foreshadowed" by earlier cases; (2) "whether retrospective operation will further or retard [the] operation" of the holding in question; and (3) whether retroactive application "could produce substantial and equitable results" in individual cases. *Id.* at 105–08, 92 S.Ct. at 354–56.

The *Hisquierdo* decision obviously decided an issue of first impression "whose resolution was not clearly foreshadowed by earlier cases." The retrospective operation of the holding would diminish, if not retard, the beneficial effect of the holding, because it would place an inequitable burden upon ex-spouses whose community estates had not been divided on the assumption that Railroad Retirement benefits constituted a community asset.

A similar question was presented in *Ex parte Hovermale*, 636 S.W.2d 828 (Tex. App.—San Antonio 1982, no writ), a habeas corpus proceeding resulting from a commitment for contempt, due to relator's failure to comply with a divorce decree requiring payment of a portion of his gross monthly military retirement benefits. Holding that the United States Supreme Court's decision in *McCarty* did not compel retroactive application, the court stated:

> We can perceive no area of law requiring more stability and finality than family law. Public policy demands finality of litigation in this area to preserve surviving family structure. A retroactive application would reopen old wounds and rekindle animosities long since extinguished. The results would be devastating to the litigants and to the judiciary in terms of expense, time and number of cases. In many instances, it would be impossible for a court to arrive at a just and equitable redistribution of assets.

*Id.* at 836.

■ A final judgment settles not only those issues that are actually tried, but also any issues that could have been litigated. That the judgment may have been wrong or premised on a legal principal which was later overruled does not affect the application of res judicata. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

■ We conclude that the 1978 divorce decree in question was not void and that the ruling in *Hisquierdo* should not be given retroactive application. We therefore overrule the relator's first point of error.

In view of our disposition of relator's first point of error, we need not consider his second point, which asserts that the trial court erred in holding that the divorce decree applied to both "Tier I" and "Tier II" benefits. Because we have decided that *Hisquierdo* should not be given retroactive application, we also hold that the trial court properly determined that the terms of the divorce decree should be strictly enforced.

■ In his third point of error, the relator contends that the trial court erred in holding that the respondent was entitled to receive 25% of his retirement benefits that were "actually received" rather than 25% of the value of such benefits "at the time of the divorce." Relator argues that the divorce decree provides that respondent is to receive 25% of relator's retirement benefits on account of relator's employment with the railroad "during the couple's marriage." Relator contends that this section shows the parties' intent to provide for an evaluation of the benefits at the time of the divorce. In support of this argument, relator cites *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983).

We find the decision in *Berry* to be inapplicable here. In that case, a divorced wife brought suit to collect her share of her ex-husband's retirement benefits, and the proof showed that she had been married to her former husband for 26 years of the 38 years that he had worked for the telephone company. The court held that the wife was not entitled to a percentage of benefits

which her husband had "actually received", but was entitled to a percentage of the benefits he would have received "at the time of the divorce" if he had been eligible for retirement. In *Berry,* the decree was silent as to the distribution of retirement benefits, and the court merely ordered a division of property that had never been previously divided. The language used by the court in the instant case was obviously intended to explain the reasoning of the court for ordering the division, and does not justify the application of *Berry* to the facts of this case. *See Anderson v. Anderson,* 707 S.W.2d 166, 169 (Tex.App.— Corpus Christi 1986, writ ref'd n.r.e.). We overrule the third point of error.

■ In relator's fourth point of error, he contends that the trial court's order is void because respondent failed to offer evidence proving his contempt.

The relator's habeas corpus petition and exhibits, together with the statement of facts made of the October 15, 1986, hearing reflect that both relator and respondent represented to the court that the only legal issue to be determined was the effect of the *Hisquierdo* decision on the parties' divorce decree. The record indicates that the terms of the decree were not an issue, and that relator's non-compliance and the amount of the arrearage was shown by the documents and representations before the court. The court's remarks at the October 15, 1986, hearing indicate that the hearing was merely a continuation of the matters presented to the court at earlier hearings. Those prior hearings have not been transcribed and filed in this appeal. The relator did not request that the court make specific findings of fact or conclusions of law with respect to any of these issues. Under the state of the record before this Court, we conclude that the court's ruling is supported by legally sufficient evidence. The fourth point is overruled.

The relator is remanded to the custody of the sheriff of Harris County.