COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| STANLEY FREEMAN, SR., | § | No. 08-10-00202-CV |
| Appellant, | § | Appeal from |
| v. | § | 285th District Court |
| SUMIKO A. FREEMAN, | § | of Bexar County, Texas |
| Appellee. | § | (TC # 98-CI-13915) |

## O P I N I O N

Stanley Freeman appeals from a Domestic Relations Order (DRO) entered in clarification of a prior divorce decree. For the reasons that follow, we reverse.

### FACTUAL SUMMARY

Stanley Freeman entered active duty military service on July 24, 1979 and married Sumiko Freeman on February 8, 1980. A divorce was rendered on September 14, 2000, although the decree was not signed until October 21, 2002. The decree divided the parties' community property including Stanley's military retirement benefits. At the time of divorce, Stanley was a Senior Master Sergeant (E-8) and had served 247 months in the United States Air Force during marriage. After the divorce, Stanley continued on active duty and retired on August 1, 2007, with a total of 28 years of service (336 months). His total monthly retired pay is $3293.

When Stanley retired, he was notified by DFAS, the Department of Financial and Accounting Services, that it would pay Sumiko 44% of his fully accumulated disposable retired pay. It refused to calculate a proper percentage which would take into account Stanley's service

post-divorce. Stanley blocked payment and Sumiko filed a motion to clarify and enforce the division of those benefits. On March 29, 2010, the trial court signed a DRO. Stanley now complains on appeal that the DRO improperly modified the decree of divorce.

## LANGUAGE OF THE ORDERS

### The Divorce Decree

The decree divided the military retirement benefits and awarded Sumiko the following benefits:

> All right, title and interest in and to 44% percent [sic] of the United States Air Force disposable retired pay to be paid as a result of STANLEY FREEMAN SR.'S service in the United States Air Force, at the grade and time in service that exists as to the date of the divorce and 44% percent [sic] of all increases in the United States Air Force disposable retired pay due to cost of all increases in the United States Air Force disposable retired pay due to cost of living or other reasons, if, as, and when received.

The decree also ordered Stanley to designate Sumiko as the former spouse beneficiary of his Survivor Benefit Plan (SBP).

> The cost of the Survivor Benefit Plan is to be paid by SUMIKO FREEMAN. SUMIKO FREEMAN is ORDERED TO set up an allotment from her portion of the military retirement to be paid to STANLEY FREEMAN on the 1st day of the 1st month that STANLEY FREEMAN notifies her that he has retired.

Although Stanley did not notify Sumiko of his retirement, DFAS did. At the time of trial, Stanley had not yet applied for the survivor benefits for Sumiko.

We pause here to mention the controversy over the 44% award. Sumiko argues in her brief that the community estate owned 88% of the benefits at the time of divorce, thus explaining that her half interest was calculated to be 44%. In support of this argument, she mentions that Stanley served in the military before marriage and that the decree of divorce was not signed until two years after rendition. Calculating Stanley's 199 days [nearly seven months] of service before marriage, and 25 months of service between rendition and entry of the decree, the parties

- 2 -

were married 247 months during Stanley's 279 months of service. Dividing 247 by 279 does result in an 88.53% ownership. Yet the associate judge entered his findings differently. In notes from September 8, 2000, he states:

> 7. Van to Pet[itioner] and truck to Resp[ondent] with respective debt.

The very next entries read:

> 8. On 9/14/00 -- Court renders on remaining property; find property division made based on evidence presented and on award to Pet[itioner] of paid van and debt assigned to Resp[ondent].
>
> 9. Pet[itioner] awarded 44% of Resp[ondent]'s military ret[ired] pay at rank and pay on date [of] divorce.

These findings form the basis for the division of the retirement benefits. And of course Sumiko's argument begs the question how the associate judge would know that the decree would not be signed until two years later. The decree itself reflects Sumiko received a vehicle without any corresponding debt.

### The Domestic Relations Order

> IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Service Member 50 percent multiplied by 247/336 or 36.75% multiplied by Service Member's monthly disposable retired pay.
>
> .    .    .
>
> IT IS FURTHER ORDERED that the foregoing calculated percentage awarded Former Spouse shall further be reduced, as necessary, to provide for Former Spouse's payment of all of the monthly Survivor Benefit Plan premium cost. This percentage is calculated at a reduction of 6.5% leaving the former spouse with a percentage of retired disposable pay of 30.26%.

### CALCULATION OF COMMUNITY INTEREST

Generally speaking, military retirement benefits earned during marriage are community property. Courts have grappled throughout the years over the proper formula for *apportioning*

the extent of the community property interest when the service member joined the military prior to marriage. Courts have also struggled with *valuing* the community property interest when the service member is still on active duty at the time of divorce.

## Apportionment of Community Interest

The *Cearley/Taggart* formula was created to address the apportionment issue. *See Cearley v. Cearley*, 544 S.W.2d 661 (Tex. 1976)(holding that military retirement benefits were community property even though the benefits at the time of the divorce "had not matured and were not at that time subject to possession and enjoyment"); *Taggart v. Taggart*, 552 S.W.2d 422, 424 (Tex. 1977)(holding that where the parties were married for 246 months of Husband's 360 months of service, the correct computation of Wife's vested interest was one-half of 246/360th's of the retirement pay). The *Taggart* formula thus involves a fraction, the numerator of which is the number of months the military member served during marriage and the denominator of which is the total number of months the member has served in the military at the time of retirement. The record before us is abundantly clear that applying this fraction to Stanley's service record reveals a numerator of 247 months of service during marriage and a denominator of 336 months' accumulated service, nearly identical to the facts in *Taggart*. For many years, case law has stated the formula as follows:

50% X <u>months of service during marriage</u> X service member's retirement benefit
                     total months of service

The fifty percent figure, of course, envisions that the trial court intends to divide the community interest equally between the parties. But, as here, the division may be disproportionate based on the circumstances presented. Sumiko received an unencumbered van and 44% of the military retirement benefits. In other circumstances, the military member may be awarded all of the retirement benefits with the non-service member receiving a larger share of another asset, such

- 4 -

as equity in the homestead.

The *Taggart* formula did not address the *valuation* of the community interest, nor did it recognize that post-divorce military service belonged to the member spouse's separate estate. That changed six years later.

### Valuation of Community Interest

Since the Supreme Court's decision in *Berry v. Berry*, Texas law has clearly mandated that the community interest be valued as of the date of divorce:

> *Taggart* only held that the divorced wife 'owned as her part of the community estate a share in the contingent right to military benefits even though that right had not matured at the time of the divorce.' *Id.* at 423. It is true that this Court did apply a formula based on the number of months in which marriage coincided with employment, divided by the number of months Taggart was in the Navy. We did not, however, determine whether the community's interest in retirement benefits should be valued as of the date of divorce, as opposed to the time the benefits were actually received. Thus, the courts of appeals' reliance on *Taggart* was misplaced.

*Berry v. Berry*, 647 S.W.2d 945, 946 (Tex. 1983). This is a simple matter when the military member has already retired and is in pay status. Where the military member continues on active duty, however, there must be some methodology for recognizing post-marital service which belongs to the member's separate estate. Most divorce decrees provide, as did the Freemans', that the percentage awarded to the former spouse will be multiplied by the benefit earned at the grade and time in service that exists as of the date of divorce, plus an equal percentage of cost of living increases, if, as, and when received. Thus, the plain reading of the divorce decree indicates that Sumiko received the following share of the community interest:

44% X <u>months of service during marriage</u> X benefit of Senior Master Sergeant (E-8)
           total months of service

Stanley is currently entitled to disposable retired pay of $3293 which is predicated on a service member classified E-8 with 28 years of service.

## IMPACT OF DRO

The parties do not disagree on the amount of disposable retired pay in the amount of $3293.[1]  Nor do they disagree on the proper fraction of 247/336 [247 divided by 336 equals .7352].  From this, we can calculate that the full community interest is 73.52% of the retired pay or $2421. [.7352 X $3293 = $2421.01].  At issue is the percentage of the community portion which Sumiko is entitled to receive.  At 44%, as stated in the decree, Sumiko should receive $1065.24 per month.  But based on the methodology expressed in the DRO, Sumiko will receive 50% of the community interest or monthly benefits of $1210.50:

### DFAS Calculation

$$.44 \times \$3293 = \$1448.92$$

### Decree Calculation

$$.44 \times \left( \frac{247}{336} \times \$3293 \right) = \$1065.24$$

### DRO Calculation

$$.50 \times \left( \frac{247}{336} \times \$3293 \right) = \$1210.50$$

The parenthetical calculates the community portion of the retirement benefit, which is then multiplied by the percentage awarded.  The DRO increases Sumiko's monthly benefit by $125.26.

## CLARIFICATION OR MODIFICATION?

---

[1]  Because the parties do not dispute the cost of the SBP premium and because Sumiko will have to pay the premium under either the divorce decree or the DRO, we need not address the alternative language in the DRO which calls for a reduction in the percentage award if DFAS deems it necessary.

In two issues for review, Stanley complains that the DRO impermissibly awards Sumiko 6% more of his disposable retired pay than did the divorce decree such that the order is not merely an order of clarification but a modification which is clearly prohibited by the Family Code. We agree. A trial court may enter orders in aid or clarification of the prior order to precisely specify the manner of carrying out the property division previously ordered so long as the substantive division of the property is not altered. TEX.FAM.CODE ANN. § 9.007 (West 2006).

We recognize that this case was transferred to this court from the Fourth Court of Appeals in San Antonio pursuant to the Supreme Court's docket equalization program. TEX.GOV'T CODE ANN. § 73.001 (West 2005). We must decide the case in accordance with the precedent of the transferor court. TEX.R.APP.P. 41.3. Sumiko directs us to *Contreras v. Contreras*, 974 S.W.2d 155 (Tex.App.--San Antonio 1998, no pet.). There the trial court awarded Irma Contreras 50% of Eduardo's military retirement benefits using a *Taggart* formula specifying the numerator as 133 months of service during marriage and the denominator as the total number of years Eduardo served in the Army:

| Eduardo's Monthly Retirement Pay | X | total no. of years during marriage in military ——————————————— total no. of years in military service at retirement | X | 50% | = | Irma's Share of Eduardo's Military Retirement Benefits |
|---|---|---|---|---|---|---|

When Eduardo retired, Irma sought to enforce and clarify the decree. The trial court entered an order awarding Irma a "sum equal to 34.1% of the disposable retired pay of an E-7 with 16 years, 3 months of creditable service pay." *Id.* As the appellate court explained, the 34.1% could only have resulted from the trial court using a *Taggart* formula of 133 months of service during marriage divided by the number of months in the military *at the time of divorce.*

*Id.* As a result, the court held, the clarification order "impermissibly *changed* the formula for apportioning Eduardo's retirement benefits, rather than clarifying the decree." *Id.* at 158 [Emphasis in original]. This was error. The court also found that the trial court had improperly computed the credit for time served in the reserves and reversed and remanded.

From this scenario, Sumiko argues that the trial court below used the *Contreras* calculations. This is only partially true. The trial court used the correct *Taggart* formula. It used the wrong percentage award. As we have noted, case law and formbooks are replete with expressing the community interest in terms of an equal division. Irma Contreras was awarded 50% of the retirement benefits in the divorce decree. Sumiko Freeman was not. She was awarded 44%. The trial court's order thus constitutes reversible error because it modified the decree. We sustain Issues One and Two. We reverse and remand the Domestic Relations Order for calculations consistent with this opinion.

April 4, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.