

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00700-CV

Andrew Darrell **BYRD**, Sr.,
Appellant

v.

Lillian Tonette **BYRD**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-12747
Honorable Victor Hugo Negron, Jr., Judge Presiding

### OPINION ON APPELLEE'S MOTION FOR REHEARING

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  November 30, 2012

MODIFIED IN PART AND AFFIRMED AS MODIFIED IN PART; REVERSED AND
REMANDED IN PART

The motion for rehearing filed by appellee Lillian Tonette Byrd is granted.  This court's

opinion and judgment dated October 3, 2012 are withdrawn, and this opinion and judgment are

substituted in their place.

At issue in this appeal is whether the trial court impermissibly deviated from the parties' mediated settlement agreement in rendering a domestic relations order. Two provisions related to military retirement benefits are in dispute—the husband's pay grade and whether the "high-36 month retired pay" is to be determined on the date of the husband's retirement or on the date of the mediated settlement agreement. Because we conclude the essential terms of the parties' agreement were included in the binding and irrevocable mediated settlement agreement, the trial court had no authority to sign a judgment that varied from the terms of the mediated settlement agreement. Thus, we modify the domestic relations order in accordance with the parties' mediated settlement agreement, and as modified, affirm the judgment of the trial court.

## BACKGROUND

Andrew and Lillian Byrd married in 1989 and ceased living together in 2009, when Andrew filed for divorce. The couple had one child, who was approximately 16 years-old at the time of divorce. Andrew and Lillian mediated the division of their community assets and obligations, and signed a Mediation Agreement on or about June 25, 2010.[1] On the first page of the agreement, in boldfaced type and all capital letters, were the following statements: "THIS AGREEMENT IS NOT SUBJECT TO REVOCATION. THIS AGREEMENT MEETS THE REQUIREMENTS OF SECTION 153.0071(d), TEXAS FAMILY CODE." "A PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT OF THIS MEDIATED SETTLEMENT AGREEMENT." In addition, on the second page, immediately above the parties' signatures, was the statement: "NOT SUBJECT TO REVOCATION THIS AGREEMENT IS BINDING ON THE PARTIES AND IS NOT SUBJECT TO REVOCATION. THIS AGREEMENT

---

[1] Although Lillian signed and dated the agreement June 25, 2010, the mediator used the date June 24, 2010; the discrepancy between the two dates, however, is not problematic for purposes of this appeal. We will use June 25, 2010, the date the Mediation Agreement was executed by both parties.

MEETS THE REQUIREMENTS OF SECTION 153.0071(d), TEXAS FAMILY CODE." The Mediation Agreement was largely handwritten but also included a pre-printed inventory worksheet listing various assets belonging to the couple. Included in that worksheet and relevant to this appeal, was a pre-printed section titled "Retirement" listing, among other things, "Military – Army O-3E."[2] This asset was to be divided 50/50 by Andrew and Lillian "as of 6/24/10." The parties also agreed that all property would be divided "as of today's date." In the Mediation Agreement, which was signed by the parties and their attorneys, Andrew and Lillian further agreed that the "fine points" regarding Lillian's share of Andrew's military retirement would be worked out by attorneys Jim Higdon and Gary Beahm, "and if they can't agree, present to court." The Mediation Agreement was approved by the trial court[3] on June 28, 2010. The parties agreed to defer entry of the divorce decree until after May 5, 2011 so that Lillian could obtain the benefit of Andrew's twenty years of active duty military service for the purpose of obtaining military medical benefits.

A year later, on May 6, 2011, the trial court[4] rendered a final decree of divorce. In the decree, the court found that the parties had entered into a mediated settlement agreement. Lillian was awarded a portion of Andrew's retirement pay "as described in a separate Domestic Relations Order . . . filed with [the] Court and . . . incorporated herein for all purposes." On July 13, 2011, the trial court signed a "Domestic Relations Order (Military Retirement) of Service Member Andrew Byrd" (DRO). The DRO awarded Lillian military retirement pay calculated as follows:

---

[2] The parties agree that on the date of the agreement, Andrew's rank was that of an O-4. The record contains no evidence as to why the worksheet listed him as an O-3E.

[3] The Honorable Janet Littlejohn, presiding judge of the 150th Judicial District Court, Bexar County, Texas, signed the Mediation Agreement.

[4] The Honorable Richard Price, presiding judge of the 285th Judicial District Court, Bexar County, Texas, signed the final decree of divorce.

[T]he sum equal to the disposable military retired pay of SERVICE MEMBER calculated as follows:

24.05% times the High-36 month retired pay of an O-4 with 19 years 2 months of creditable service towards retirement, determined on the date of SERVICE MEMBER's retirement from the U.S. Armed Forces.

. . .

IT IS FURTHER ORDERED AND DECREED that FORMER SPOUSE shall also be entitled to receive that share attributable to the interest awarded to FORMER SPOUSE herein of any and all COLA's or other increases in the monthly disposable retired pay paid after retirement.

Prior to the entry of the DRO, a hearing was held on May 6, 2011 pertaining to the provisions of the DRO. Counsel for each side presented a proposed DRO. Andrew's counsel argued that retirement benefits should be divided according to "what [Andrew] was" at the time the agreement was signed. "I realize that everybody is arguing that he's an O4, but if he had retired on that date of divorce on that particular date, he would have retired as an O3 E." Counsel later stated that his client was "willing to leave that as an O4." Counsel for Lillian spent a great deal of time arguing that her share of military retirement benefits should be determined on the date of Andrew's retirement, but limited to that of an O-4 with 19 years 2 months, so that she could obtain active duty cost of living allowances; Andrew's attorney countered that pursuant to the Mediation Agreement, benefits should be determined as of June 24, 2010. At the conclusion of the hearing, Andrew's counsel stated, "We're conceding that he's an O4 as opposed to an O3." The trial court took the matter under advisement, and ultimately signed the DRO proposed by Lillian's attorney on July 13, 2011.

Thereafter, Andrew filed a motion to reform the DRO, arguing that the trial court erred in granting Lillian retirement pay determined on the date of Andrew's retirement, and not on the date the Mediation Agreement was signed. Andrew additionally argued that the trial court erred

in granting Lillian benefits of an O-4 when her share of Andrew's military retirement benefits should have been limited to the rank of O-3E. The trial court held a hearing on the motion to reform. The motion was subsequently denied.[5] Andrew now appeals, raising five issues in which he essentially argues that the trial court erred in rendering a DRO that is inconsistent with the express provisions of the Mediation Agreement because the order (1) grants Lillian military retirement benefits of an O-4 instead of an O-3E and (2) awards the high-36 month pay of an O-4 with 19 years and 2 months of creditable service on the date of Andrew's retirement instead of the date of the Mediation Agreement.

**STANDARD OF REVIEW**

Like most appealable issues in a family law case, we review the trial court's rendering of a domestic relations order pursuant to a mediated settlement agreement under an abuse of discretion standard. *See Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex. App.—El Paso 2005, no pet.); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 331-32 (Tex. App.—Dallas 2004, no pet.) (trial court has no discretion to vary from terms of mediated settlement agreement). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

**DISCUSSION**

*Applicable Law*

Mediated settlement agreements are subject to being invalidated if they are illegal or procured by fraud, duress, coercion, or other dishonest means. *See Boyd v. Boyd,* 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.). Parties can ordinarily withdraw from mediated settlement agreements before they are incorporated into judgments, subject to having the

---

[5] The Honorable Martha Tanner, presiding judge of the 166th Judicial District Court, Bexar County, Texas, signed the order denying the motion to reform the domestic relations order.

agreement enforced as a contract that complies with Rule 11 of the Texas Rules of Civil Procedure. *See id.* at 403; TEX. R. CIV. P. 11. However, a mediated settlement agreement concerning either dissolution of marriage or a suit affecting the parent-child relationship is binding if the agreement:

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
> (2) is signed by each party to the agreement; and
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

*See* TEX. FAM. CODE ANN. §§ 6.602(b), 153.0071(d) (West 2006 & West 2008).

Here, the record reflects that the Mediation Agreement meets the statutory requirements. Moreover, neither Andrew nor Lillian argues that the agreement did not meet the statutory requirements, or that section 153.0071 is inapplicable. A mediated settlement agreement that meets the statutory requirements is binding and irrevocable, and "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* §§ 6.602(c), 153.0071(e) (West 2006 & West 2008); *cf. Milner v. Milner*, 361 S.W.3d 615, 618 & n.2 (Tex. 2012) (applying section 6.602 of the Texas Family Code, which is worded identically to section 153.0071(d)); *Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (same); *In re Marriage of Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied) (same); *Boyd*, 67 S.W.3d at 402 (same); *Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (same). Unlike other settlement agreements in family law, the trial court is not required to determine if the property division is "just and right" before approving a mediated settlement agreement. *Milner*, 361 S.W.3d at 618 (citing *Joyner*, 196 S.W.3d at 889, 891). A mediated settlement agreement must be enforced in the absence of allegations that the agreement calls for

the performance of an illegal act or that it was procured by fraud, duress, coercion, or other dishonest means. *See Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 242 (Tex. App.—Austin 2007, pet. denied). While a trial court in these circumstances has authority not to enforce the mediated settlement agreement, it has no authority to sign a judgment that varies from the terms of the mediated settlement agreement. *Udall*, 141 S.W.3d at 331-32.

### *Pay Grade*

Andrew first argues that the trial court had no authority to sign a DRO awarding Lillian military retirement benefits inconsistent with those she agreed upon in the Mediation Agreement. Andrew contends that although he had attained the rank of major at the time the Mediation Agreement was signed, Lillian agreed to accept the military retirement benefits of an O-3E predicated on 19 years 2 months of service by Andrew because he did not yet have the requisite three years as a major for retirement purposes. In the absence of an allegation of fraud, accident, coercion, or mistake—none of which are alleged here—Andrew maintains the trial court must sign a judgment conforming to the Mediation Agreement.

Lillian responds first that the Mediation Agreement purposely left open the terms of Lillian's share of military retirement benefits. Lillian directs us to the following handwritten language in the Mediation Agreement:

> As to language for fine points of wife's share of military retirement Jim H & Gary B will work on it and if they can't agree, present to court.

Lillian thus argues that the ultimate division of military retirement was to be decided by the trial court.

We disagree that the above-quoted paragraph applies to pay grade. In this case, pay grade is not a "fine point," but rather a substantive provision expressly agreed to by the parties in the Mediation Agreement. When interpreting a contract, our primary concern is to ascertain and

give effect to the intent of the parties as expressed in the contract. *In re Service Corp. Intern.*, 355 S.W.3d 655, 661 (Tex. 2011). Interpretation of an unambiguous agreement requires us to examine the entire agreement and to give effect to each provision so that none is rendered meaningless. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Neither party argues on direct appeal that the Mediation Agreement is ambiguous or that a mistake was made in drafting. An agreement is unambiguous if its language can be given a certain or definite interpretation. *Milner*, 361 S.W.3d at 624 (Johnson, J., dissenting) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951)). Here, the term "O-3E" is certain and definite, and not reasonably susceptible to more than one meaning. *See Toler*, 371 S.W.3d at 481. Further, at oral argument before this court, counsel for Lillian agreed that Andrew could not have retired as an O-4 on the date the Mediation Agreement was signed. Accordingly, we conclude that Andrew's pay grade was not a "fine point" subject to fleshing out by the parties' attorneys, but was an unambiguous, express term agreed to by the parties in the Mediation Agreement.

Lillian next asserts that Andrew's counsel stipulated or conceded that Andrew was an O-4 at the hearing on May 6, 2011, and thus the trial court did not err in awarding her military retirement benefits of an O-4. "A stipulation is an agreement, admission, or concession made in a judicial proceeding by the parties." *Hansen v. Academy Corp.*, 961 S.W.2d 329, 336 (Tex. App.—Houston [1st Dist.] 1997, writ denied); *Federal Lanes, Inc. v. City of Houston*, 905 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1995, writ denied). A stipulation constitutes a binding contract between the parties and the court. *Federal Lanes*, 905 S.W.2d at 689.

We disagree that any claimed stipulation by Andrew's counsel had the effect of altering the terms of the mediation agreement. First, both sections 6.602 and 153.0071(d) foreclose the

possibility of modifying a mediated settlement agreement after the parties and their attorneys have signed it.[6] *See* TEX. FAM. CODE ANN. §§ 6.602; 153.0071(d),(e). In *Joyner*, the Texarkana Court of Appeals noted that once the requirements of a section 6.602 agreement are met, the agreement becomes "more binding than a basic written contract; nothing either party could have done would have modified or voided the Agreement once everyone had signed it." *Joyner*, 196 S.W.3d at 889 (citing *Cayan*, 38 S.W.3d at 165-66). Agreements made pursuant to sections 153.0071(d) and 6.602 are an exception to other provisions of the Family Code which permit revision and repudiation of settlement agreements before rendition of divorce. *See, i.e.,* TEX. FAM. CODE ANN. § 7.006 (West 2006). By proceeding under section 153.0071(d), the parties elect to make their agreement binding at the time of execution, thus creating a "procedural shortcut" for the enforcement of the agreement. *Joyner*, 196 S.W.3d at 889; *Cayan*, 38 S.W.3d at 165-66. Thus, unlike standard contract situations, section 153.0071(d) does not contemplate that the parties will have the ability to modify a mediated settlement agreement—whether by written amendment or oral stipulation—after execution, because the goal of the statute is to fast-track enforcement of mediated settlement agreements in divorce cases.

Second, even if we were to accept Lillian's premise that a section 153.0071(d) agreement can be modified by oral stipulation, we disagree that the alleged stipulation made here suffices to modify the agreement. Stipulations must be clear and unequivocal. *In re Brown*, 277 S.W.3d 474, 480 n.8 (Tex. App.—Houston [14th Dist.] 2009) (orig. proceeding) (judicial admissions must be clear and unequivocal); *Salaymeh v. Plaza Centro, L.L.C.*, 264 S.W.3d 431, 438-40 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Our reading of the relevant hearing does not

---

[6] While section 153.0071 of the Family Code governs mediated settlement agreements for child conservatorship, section 6.602 governs mediated settlement agreements for property distribution. *Compare* TEX. FAM. CODE ANN. § 6.602(b) *with* TEX. FAM. CODE ANN. § 153.0071(d). The wording of the statutes regarding the creation of an immediately binding and irrevocable agreement is identical.

reveal a clear intent by Andrew's counsel to modify the Mediation Agreement. Counsel did agree that Andrew was an O-4 at the time the Mediation Agreement was signed; however, that is not a disputed fact—both parties agree Andrew had been promoted to an O-4 before the signing of the Mediation Agreement. Considering the circumstances in which it was made, we construe counsel's statement to be ambiguous, and not dispositive of the ultimate question, which was at what pay grade was Lillian's share of Andrew's military retirement to be calculated? According to the Mediation Agreement, which met all the requirements of section 153.0071(d) and was signed by the parties and their attorneys, Andrew was an O-3E for retirement purposes as of June 24, 2010. Absent a finding that the agreement was illegal or violated public policy, or that the term O-3E was drafted in error or was ambiguous, the trial court thus had no discretion to render a judgment that varied from the terms of the Mediation Agreement. *See In re Marriage of Ames*, 860 S.W.2d 590, 593 (Tex. App.—Amarillo 1993, no writ) (trial court cannot disregard or insert terms into a mediated settlement agreement). We therefore sustain Andrew's first three issues.

### *"High-36 Month Retired Pay"*

Andrew next argues the trial court erred in awarding the High-36 month retired pay of an O-4 determined on the date of his retirement from the U.S. Armed Forces. Andrew contends that the High-36 month retired pay is contractually limited to June 24, 2010 as reflected in the Mediation Agreement and cites *Marshall v. Priess*, 99 S.W.3d 150, 158-59 (Tex. App.—Houston [14th Dist.] 2002, no pet.), in support. Otherwise, Andrew contends he would be divested of his separate property in contravention of *Berry v. Berry*, 647 S.W.2d 945, 947 (Tex. 1983), in which the court held that pension benefits accruing for services rendered after a divorce are not part of the parties' community estate subject to a just and right division. Lillian responds that if the retired pay awarded her is determined on the date the Mediation Agreement was

signed, as Andrew argues, it would not allow her awarded share to increase due to post-divorce costs of living adjustments (COLA's) through the date of retirement.

The Mediation Agreement unmistakably reads that military retirement is to be divided "as of 6/24/10." Because the Mediation Agreement clearly dictated that Andrew's military retirement would be divided 50/50 as of June 24, 2010, the trial court had no authority to render a judgment that varied from the terms of the Mediation Agreement. *Joyner*, 196 S.W.3d at 890-91. Accordingly, we sustain Andrew's fourth issue, and modify the judgment of the trial court to reflect that military retirement benefits be divided as of the date the Mediation Agreement was signed.[7]

Finally, we note that although we are sustaining Andrew's fourth issue, we are not modifying the DRO in other respects. Of particular note is a separate provision in the DRO that authorizes the equal application of passive increases to each share of the now divided community property portion of Andrew's retirement benefits. The provision reads as follows:

> IT IS FURTHER ORDERED AND DECREED that FORMER SPOUSE shall also be entitled to receive that share attributable to the interest awarded to FORMER SPOUSE herein of any and all COLA's or other increases in the monthly disposable retired pay paid after retirement.

We interpret the above-quoted provision to award active duty COLA's that are applicable to each half of the equally divided community asset. In other words, while Andrew's retirement benefits were divided on the date the Mediation Agreement was signed by the parties, Lillian is entitled, just as Andrew is similarly entitled, to all passive increases attributable to her share of the retirement benefits awarded to her from the date of division on June 25, 2010 through and to include the date of his retirement. Furthermore, counsel for Andrew conceded in oral argument that Lillian is entitled to all future COLA's attributable to her percentage of retirement benefits.

---

[7] It is not necessary to reach Andrew's fifth issue. *See* TEX. R. APP. P. 47.1, 47.4.

Lillian's motion for rehearing fails to acknowledge this separate provision in the DRO that expressly addresses COLA's and other passive increases or explain the reason she believes this express provision fails to award her "active duty COLA's." It appears that Lillian may believe that the final phrase in that provision "paid after retirement" means that the provision addresses only COLA's and other passive increase adjustments made after the date of Andrew's retirement. As previously noted, however, both Andrew and this court agree that Lillian is entitled to all passive increases attributable to her share of the retirement benefits after the date of the division. To the extent the phrase "paid after retirement" can be construed to deprive Lillian of those passive increases, the language in the order is erroneous. Accordingly, in an abundance of caution, we reverse the afore-quoted portion of the trial court's order addressing COLA's and other increases, and we remand the cause to the trial court to incorporate a provision in the DRO that expressly awards Lillian all "active duty COLA's" and other passive increases attributable to her share of the retirement benefits after the date of the division on June 25, 2010, in addition to all such passive increases after the date of Andrew's retirement.

## CONCLUSION

Based on the foregoing, we modify the judgment of the trial court to reflect that Andrew's rank was classified as an O-3E as of the date the Mediation Agreement was signed by the parties and that Lillian's community interest in Andrew's military retirement be calculated as follows:

> 24.05% times the High-36 month retired pay of an O-3E with 19 years 2 months of creditable service towards retirement, determined as of the date of June 25, 2010 to be paid on SERVICE MEMBER'S retirement from the U.S. Armed Forces.

Furthermore, we reverse the portion of the trial court's order addressing COLA's and other increases and we remand the case to the trial court to incorporate a provision in the DRO that

expressly awards Lillian all "active duty COLA's" and other passive increases attributable to her share of the retirement benefits after the date of the division on June 25, 2010, in addition to all such passive increases after the date of Andrew's retirement. As modified, the judgment of the trial court is affirmed in all other respects.

Phylis J. Speedlin, Justice