**AFFIRM; and Opinion Filed July 17, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00384-CV

## IN THE INTEREST OF W.B.B., A CHILD

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-14-23119**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Myers, and Boatright
Opinion by Justice Boatright

In this appeal from modification of a child custody order, W.B.B.'s father (Father) raises five issues for our review. He challenges the denial of his motion to recuse the trial judge as well as directives in the trial court's Order in Suit to Modify Parent-Child Relationship involving (a) his right to designate the child's primary residence, (b) the schedule for possession of the child, (c) child support, and (d) issues involving routine interaction among the parents and the child. We decide all issues against Father and affirm the orders appealed.

### Background

Father filed a motion to modify the mediated order under which he and W.B.B.'s mother (Mother) shared custody and possession of their only child after their divorce. That order designated the parents joint managing conservators of W.B.B. and ordered Mother to pay child

support. Father was given the exclusive right to designate the child's primary residence within Dallas County and contiguous counties.

In this proceeding, Father sought—among other modifications—to be named sole managing conservator of W.B.B., to have Mother designated only a possessory conservator, and to have Mother's child support payments increased. Mother filed an answer and counterpetition. She did not request a change in conservator status, but she sought the exclusive rights to designate W.B.B.'s primary residence, to receive—rather than pay—child support, to make educational decisions for the child, and to maintain his passport. Both parents readily concede that their relationship is extremely contentious.

The jury found that the parties should remain joint managing conservators and that Father should have the exclusive right to designate W.B.B.'s primary residence within the continental United States. The trial court incorporated those findings into its Order in Suit to Modify Parent-Child Relationship. The trial court also gave Father exclusive rights to make educational decisions for W.B.B. and to maintain his passport. The court devised a week-on-week-off possession schedule and declined to order either parent to pay child support. The court also made orders involving the child's extracurricular activities, telephone contact with the parent not in possession, and requiring Father to pay all travel expenses if he moves W.B.B.'s primary residence out of Dallas County.

Father appeals.

**Motion to Recuse**

In his first issue, Father argues that his motion to recuse the trial judge was erroneously denied. The motion to recuse was actually brought by Father's then newly engaged attorney, Keith

D. Becker, when Becker first appeared in the case.[1] The motion states that it "is filed contemporaneously with the designation of the undersigned as lead counsel for [Father]." Becker verified the motion, which states that the Honorable Kim Cooks's impartiality might reasonably be challenged because Becker was at that time representing Judge Cooks's former husband in litigation involving the judge's son. The motion goes on to state that the case was sealed, and Becker was prohibited from discussing it, but that "his representation creates such a bias against [him] that no client of [his] can receive a fair trial before Judge Cooks." The motion was properly referred and, following a hearing, it was denied by Regional Presiding Judge Mary Murphy.

We review an order denying a motion to recuse for an abuse of discretion. *Drake v. Walker*, 529 S.W.3d 516, 528 (Tex. App.—Dallas 2017, no pet.). Judge Murphy's order states that she considered the motion, response, and the evidence, indicating evidence was offered at the hearing. However, we have no reporter's record of that hearing. "[W]ithout a reporter's record, an appellate court cannot review a trial court's order for an abuse of discretion." *Willms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied). Indeed, when the appellant does not bring forward a reporter's record, we must presume the evidence presented at the hearing was sufficient to support the court's order. *Id.*

But Father argues that the absence of a hearing transcript is inconsequential, and that the testimony elicited at the hearing "does not add value to either side of the argument." He argues that "the sheer existence of the relationship was inherently wrought with bias and prejudice in a way that reasonably called Judge Cooks'[s] impartiality into question." This "sheer existence" of the attorney-client relationship between Becker and the judge's former husband is the only fact

---

[1] We have located one case in which an attorney brought a motion to recuse, and the court of appeals addressed the motion as it would if brought by a party. *Sears v. Olivarez*, 28 S.W.3d 611, 613 (Tex. App.—Corpus Christi 2000, no pet.). We shall do the same.

–3–

established by the verified motion to recuse. Father appears to contend that the relationship mandates recusal as a matter of law. We disagree.

Father relies heavily upon *Monroe v. Blackmon*, 946 S.W.2d 533 (Tex. App.—Corpus Christi 1997), *vacated sub nom. In re Union Pac. Res. Co.*, 969 S.W.2d 427 (Tex. 1998), but we conclude that *Monroe* does not support Father's position. In *Monroe*, the trial judge himself was being represented in another matter by the same firm representing a defendant in the *Monroe* case. 946 S.W.2d at 534. In addition, the *Monroe* judge participated fully in the recusal hearing, calling himself as a witness, giving oral argument, and offering exhibits—all in opposition to the motion to recuse. *Id.* at 535. The court of appeals called this participation "extraordinary," concluding that it aligned the judge with the defendants and against the plaintiffs. *Id.* at 537–38. And the court declared, "Active participation by a challenged judge in recusal proceedings can only lead to the judge's recusal." *Id.* at 538. In Father's case, the attorney-client relationship did not involve the trial judge personally. And in Father's case there is no indication that the trial judge participated in the recusal proceeding in any way. *Monroe* cannot be authority to conclude that denial of the motion to recuse was erroneous as a matter of law.

The test for recusal under Texas Rule of Civil Procedure 18b(2) is "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 776 (Tex. App.—Dallas 2011, no pet.). Without a reporter's record, the only fact in the public domain is that Father's attorney represented the trial judge's former spouse "in litigation involving [the judge's] son." That fact is insufficient to allow a reasonable person to doubt Judge Cooks's impartiality. "Courts enjoy a presumption of impartiality." *Escobar v. State*, No. 05-13-01562-CR, 2015 WL 1106579, at *4 (Tex. App.—

–4–

Dallas Mar. 10, 2015, no pet.). In the absence of evidence to the contrary, we cannot say that denying the motion was an abuse of discretion. We overrule Father's first issue.

## Challenges to the Trial Court's Modification Order

Father's remaining issues challenge various provisions of the trial court's modification order. We review each of the challenges for an abuse of discretion. *Interest of J.M.*, No. 05-15-01161-CV, 2017 WL 563341, at *2 (Tex. App.—Dallas Feb. 13, 2017, no pet.) (mem. op.). The trial court's primary consideration in determining these issues is always the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2014).

### *Contravention of Jury Verdict*

In his second issue, Father contends that the trial court's modification order contravenes the jury's verdict in two ways. He argues that the trial court's week-on-week-off possession schedule essentially "stripped Father of his right to be named the 'primary' parent as directed by the jury." And he contends that the assignment of travel expenses to Father if he moves out of Dallas County, together with the absence of a standard Family Code provision governing parents who reside more than 100 miles apart, essentially confined the child's primary residence to Dallas County rather than anywhere within the continental United States

The trial court properly submitted to the jury questions asking whether the parties' existing order should be modified to name Father as sole managing conservator and Mother as possessory conservator, or whether they should remain joint managing conservators. TEX. FAM. CODE ANN. § 105.002(c)(1)(A–C) (West Supp. 2017). The jury was also asked which parent should have the exclusive right to designate the child's primary residence *Id.* § 105.002(c)(1)(D), whether to impose a geographic restriction on the location of the primary residence *id.* § 105.002(c)(1)(E), and, if so, what the restricted geographic area should be *id.* § 105.002(c)(1)(F). The Family Code provides that the trial court may not contravene the jury's answers to these questions. *Id.*

§ 105.002(c)(1). And the modification order, on its face, does not. The order names the parties joint managing conservators, as the jury did. The order also states that Father has the exclusive right to designate the child's primary residence within the continental United States, as the jury did. In fact, the trial court awarded Father more exclusive rights in the modification order: only Father can make educational decisions for W.B.B., and only Father can maintain his passport.

But Father contends that by refusing to set a schedule that gave him significantly more time of possession of W.B.B. than Mother, the court denied him the status the jury gave him of "primary" parent. What the jury decided, as the Family Code contemplates, was that Father would hold a number of important exclusive rights concerning where W.B.B. would live. But those rights are not tied to the specifics of a trial court's possession order. The trial court retains the authority to determine any specific term or condition of possession of or access to the child; those terms and conditions of possession are not matters for jury determination. *Id.* § 105.002(c)(2)(B). There is simply no requirement in the Family Code that one joint managing conservator be given more time of possession of a child because of any particular jury finding.

Nor is there a general prohibition, as Father suggests, against awarding joint managing conservators roughly equal times of possession and access. "Equal time between parents is neither prohibited nor recommended." *Albrecht v. Albrecht,* 974 S.W.2d 262, 265 (Tex. App.—San Antonio 1998, no pet.). And contrary to Father's arguments, such an arrangement neither poses an inherent conflict with a child's having a primary residence or renders the right to designate the primary residence meaningless. Designating a primary residence is necessary for two reasons: to determine residency for purposes of public school enrollment and as a significant factor in the power of relocation. *Doncer v. Dickerson*, 81 S.W.3d 349, 361 (Tex. App.—El Paso 2002, no pet.). Placing the power for those functions in the hands of a single party was intended to achieve stability in custodial issues. *In re R.C.S.*, 167 S.W.3d 145, 148–49 (Tex. App.—Dallas 2005, pet.

–6–

denied). It is this power that makes Father "primary" as that shorthand term is used, not the number of days he has possession of W.B.B. Thus, even if the calendar determines that in some years Mother has possession of W.B.B. more days than Father does, he retains the exclusive rights awarded him by the jury and the trial court.

Father also argues that the court has effectively contravened the jury's finding that he should be permitted to designate W.B.B.'s residence anywhere throughout the continental United States. Again we disagree. Father's concern about paying travel costs is speculative at best. The only evidence in the record concerning Father's moving the child from his current home is Father's testimony that he has no intention of doing so and that such a move would only take place if he were transferred by his employer. The jury considered this testimony in their findings. However, the trial court was well within its discretion—especially given the contentious nature of the relationship between these parents—to direct that any move initially provide for possession transfers to be paid for by Father. We say "initially" because the trial court retains continuing jurisdiction over this case through W.B.B.'s minority. The trial court may modify an order if doing so would be in the best interest of the child and the circumstances of the child have materially and substantially changed. TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014). We reject Father's contention that modification after materially changed circumstances amounts to unnecessary litigation.

For the same reasons, we reject Father's complaint that the modification order does not include the standard possession order's provision for possession when parents reside more than 100 miles apart. *Id.* § 153.313 (West 2014). The trial court, was within its discretion, to fashion a possession schedule different from the standard possession order because of the nature of the relationship between these parents. Should circumstances change materially, Father may seek modification in this regard as well, but we will not disturb the trial court's terms and conditions of

possession absent a clear abuse of discretion. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). At this time, under the parties' current circumstances, we discern no abuse of discretion in the court's order. We overrule Father's second issue.

*Deviation from the Standard Possession Order*

In his third issue, Father argues the trial court erred by deviating from the standard possession order schedule set forth in the Family Code by ordering a schedule of week-on-week-off possession. He points to the code's presumption that the standard possession order "(1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator; and (2) is in the best interest of the child." TEX. FAM. CODE ANN. § 153.252 (West 2014). And he relies on the testimony of the court's expert, Dr. Blake Miller, who proposed a schedule during the school year based on standard possession—with expansions for Mother—and a week-on-week-off schedule for the summer months. As we discussed above, Father argues throughout his brief that he should have possession of W.B.B. more than Mother by virtue of the jury's designating him as the person to make specific decisions for the child. The standard possession order would give him more access to and possession of W.B.B. than the trial court's order does. However, Father sought the week-on-week-off schedule during summer months, so his own request varied significantly from the standard possession order.

At trial, Mother sought "primary custody" of W.B.B., testifying that as his mother she was nurturing and gave her son the emotional stability he needed. She stated he felt safe and stable at Mother's home, and she contended she was better able to co-parent than Father because she wants W.B.B. to have a relationship with Father and would work toward that end, whereas Father had actually argued for only supervised visitation for her with W.B.B.

–8–

Both parties testified that the child was happy when living with them. Both confirmed that the child had friends with whom he played in the neighborhood and that he was positively engaged in the home as well.

The trial court observed the parties, listened to them testify to their relationships with W.B.B. and with each other, and then fashioned and ordered its own possession schedule. Father requested findings on the court's reason for deviating from the standard order, and the court found that: (1) Father himself had testified that the standard possession order was not in W.B.B.'s best interest, and thus he rebutted the section 153.252 presumption; (2) the standard order provides the reasonable minimum possession for a joint managing conservator, but his order provides more than that minimum to both parents; (3) the evidence established it was in W.B.B.'s best interest to spend more than the minimum time with Mother; and (4) the evidence established that reducing the numbers of disruptive exchanges was also in his best interest.

We conclude that sufficient evidence supports these findings. Our review of the record establishes that neither parent sought imposition of the standard possession order in its entirety, and that each offered reasons for their request. The testimony was not, as Father characterizes it, limited simply to what either party "wanted." Instead, the parties testified to their experiences with various schedules in the past as well as to fact and opinion-based reasons why their proposed schedules would be better for W.B.B. But in addition to the parties' specific testimony about possession, the court also heard testimony concerning the hostility with which the parties interact and the effect of those interactions on their son. We conclude that sufficient evidence rebutted the presumption that a standard order was in this child's best interest and supported the trial court's fashioning an order that gives both parents the opportunity for significant periods of time with their son and avoids some number of contentious and disruptive transfers of the child between the parties.

Because the evidence supports the trial court's findings, we discern no abuse of discretion in the court's deviation from the standard possession order. We overrule Father's third issue.

*Deviation from Child Support Guidelines*

In their pleadings, Mother asked the trial court to terminate her obligation to pay child support and to order, instead, that Father pay support; Father asked for Mother's support payments to be increased. The trial court did not order child support—from either parent—"at [that] time." In his fourth issue, Father complains that the trial court did not order Mother to pay support.

Father sought findings concerning the trial court's decision not to apply Family Code guidelines concerning child support in this case. TEX. FAM. CODE ANN. § 154.130 (West Supp. 2017). The court made four findings in response, stating that:

a.    application of the guidelines would be unjust or inappropriate;

b.    the net resources of the obligor and the obligee are approximately $6,726.49;

c.    the percentage applied to the obligor's net resources for child support is 20%; and

d.    the amount ordered varies from the guidelines because ordering no monthly cash support is in the child's best interest, the income of the parents is roughly equivalent and the possession and access schedule of the parties is roughly equivalent as well.

Father contends that the court's deviation from the guidelines, as explained by these findings, was an abuse of discretion for three reasons. First, he reprises his argument that he is due more possession time than Mother by virtue of the jury's findings, so that basing the support decision on equivalent possession is incorrect. We have already rejected Father's contention that awarding the parties equal possession was erroneous, so we reject this related argument as well.

He argues further that the "crushing burden" of paying 100% of travel expenses if he moves W.B.B. out of Dallas County should have been considered a factor in the child support decision. He argues that this potential obligation argues for Mother's paying support or taking on the travel

–10–

expenses herself. Again, we have addressed the order concerning travel expenses. The only evidence in the record concerning moving W.B.B. is that Father has no plans to do so and that any move would be required by his employer. Should Father change his mind or his employer require a change, the trial court has continuing jurisdiction to determine whether the modification order continues to respond to the child's needs in all areas, including child support.

Father argues that the evidence of relevant factors not within the court's findings also supports a support award to him. He contends that Mother has a house and car paid for by another person, but evidence of Mother's spouse's income and contribution to the household was excluded by the trial court, and Father has not briefed any argument that exclusion of this evidence was erroneous. He stresses that he maintains health and dental insurance for W.B.B.; the record shows that Mother also carries supplemental dental insurance for him. There is evidence that Father has another child residing with him, and Mother does not. But we are not persuaded by that single factor that the trial court's decision was an abuse of discretion.

Parents have a legal duty to support their children during their minority. *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011). The traditional purpose of child support is "to help a custodial parent maintain an adequate standard of living for the child." *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991). In this case, neither parent has the singular financial obligations of a custodial parent; the parents share roughly equally in maintaining W.B.B.'s standard of living. The trial court's findings considered the appropriate primary circumstances when determining the child support issue: the ability of the parents to pay and the needs of the child. *Holt v. Holt*, 620 S.W.2d 650, 651 (Tex. Civ. App.—Dallas 1981, no writ). Father has not shown a clear abuse of discretion in the court's child support order; we will not disturb that order on appeal. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We overrule Father's fourth issue.

*Orders Regarding Extracurricular Activities and Phone Contact with Child*

In his final issue, Father challenges two directives within the modification order involving W.B.B.'s activities and daily schedules. Father asserts that neither party requested these provisions, but the trial court has discretion to place conditions on matters of possession even if the pleadings do not request such conditions, *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied).

The first of these orders addresses W.B.B.'s extracurricular activities. Father asserts that the child's extracurricular activities have presented consistent problems between the parents in planning and transportation. He complains that Mother did not always bring W.B.B. to his activities during her possession and that she signed him up for activities that would interfere with Father's work schedule during his own possession. The modification order attempts to resolve such conflicts; it states:

> [Mother] shall have the right to choose one extracurricular activity for the child in the Fall and one in the month of June. [Father] shall have the right to choose one extracurricular activity for the child in the Spring and in the month of July. *The other parent is ORDERED to make sure the child attends his practices and games even if it is not during their normal weekly periods of possession with the child*. It is further ORDERED that no consent of the other parent is required for enrolling the child in extracurricular activities. Each parent is ORDERED to provide notice to the other parent as soon as they have chosen an extracurricular activity for the child and no later than the day they sign the child up for the activity. (Emphasis added.)

Father contends the italicized provision in this paragraph dealing with transportation is ambiguous, and we agree that it is not a model of clarity. However, the final clause of the sentence—"even if it is not during their normal weekly periods of possession with the child"—makes the court's intention clear. The provision orders the parent who signs the child up for an activity to be responsible for transporting the child to that activity, regardless of whether the activity occurs during his or her normal possession period. In this way, the provision places one parent in control of the activity during that parent's season or month:  choosing the activity, signing up the child,

–12–

giving notice to the other parent, and transporting the child to the activity regardless of who is in possession that week.

The trial court also ordered that the parent not in possession of W.B.B. is entitled to a phone call with him each evening between seven and eight o'clock. If the child is unavailable during that time period, the parent in possession must see that W.B.B. returns the call later that evening. Father argues that this requirement is not in W.B.B.'s best interest because it interferes with his regular activities, including meals, playtime, homework, and bedtime. This is a condition of possession that cannot be submitted to the jury. TEX. FAM. CODE ANN. § 105.002(c)(2)(B). It is within the prerogative of the trial court, subject to abuse of discretion, and Father does not explain how ordering a regular phone call might be an abuse of discretion. A regular call is a form of contact with the parent not in possession, and our public policy supports "frequent and continuing contact" between children and parents who are acting in the child's best interest, *id*. § 153.001(a)(1) (West 2014).

We conclude the trial court's orders concerning extracurricular activities and evening telephone calls are within its discretion and comport with the best interest of W.B.B. We overrule Father's fifth issue.

## Conclusion

We have decided each of Father's issues against him. We affirm the order denying the motion to recuse the trial judge and the trial court's modification order.

/Jason Boatright/
_____
JASON BOATRIGHT
JUSTICE

170384F.P05

–13–



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

IN THE INTEREST OF W.B.B., A CHILD

No. 05-17-00384-CV

On Appeal from the 255th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-14-23119.
Opinion delivered by Justice Boatright. Justices Lang-Miers and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Stephanie Byrd recover her costs of this appeal from appellant William Barrett Byrd.


Judgment entered this 17th day of July, 2018.