**Gary Garth ALBRECHT, Appellant,**

v.

**Patricia ALBRECHT, Appellee.**

No. 04–97–00224–CV.

Court of Appeals of Texas,
San Antonio.

May 6, 1998.

Karl E. Hays, Law Offices of Karl E. Hays, San Antonio, for Appellant.

Robert F. Estrada, Robert F. Estrada, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

LÓPEZ, Justice.

Gary and Patricia Albrecht divorced after four years of marriage. The couple has a minor child over whom they now exercise joint managing conservatorship. In this appeal, Gary asks the court to reverse and remand the couple's Final Decree of Divorce on two issues: division of Gary's retirement benefits, and possession and/or holiday visitation of his son.

### Gary's Pension Plan

In his first two points of error, Gary challenges the trial court's division of his pension plan. The court apportioned Gary's pension as follows:

$$\frac{1}{2} \times \frac{\text{\# months married (57)}}{\text{total months service}} \times \text{dollars per month} = \text{Patricia's share}$$

Gary contends that this formula operates to divest him of a portion of his separate property—specifically, that portion of the plan that will accrue after the date of his divorce. Further, Gary contends that this portion of the court's judgment must be reversed and remanded for a new trial because no evidence of the value of his pension was presented at trial. In response, Patricia argues that because Gary did not present evidence about the value of his pension plan, the trial judge applied the correct formula for determining the community interest in a pension

$$\frac{1}{2} \times \frac{\text{\# years of service while married}}{\text{\# years of service at retirement}} \times$$

plan at the time of divorce—that being the formula set out in *Taggart v. Taggart*, 552 S.W.2d 422, 424 (Tex.1977).

The formulas for apportioning retirement benefits differ depending on whether the value of the pension plan is at issue. *See May v. May*, 716 S.W.2d 705, 710 (Tex.App.—Corpus Christi 1986, no writ) (explaining when each formula should be used). The formula used when the value of the pension plan *is not in issue* was set out in *Taggart* as follows:

$$\frac{\text{value of accrued benefit}}{\text{at date of retirement}} = \frac{\text{non-employee}}{\text{spouse's share}}$$

*See Taggart*, 552 S.W.2d at 424. This formula is called the *Taggart* formula. The formula was used by the Supreme Court of Texas to determine the non-employee spouse's community interest in military retirement benefits. *Id.* In *Taggart*, an ex-wife sued for her

portion of her ex-husband's retirement benefits after he retired; the value of the plan was not at issue in the case.[1] *Id.*

When the value of the plan *is in issue*, the following formula is used:

$$\frac{1}{2} \times \text{\# years married under pension plan} \times \text{value of plan on date of divorce} = \text{non-employee}$$

---

1. Notably, the apportionment in *Taggart* was based on the value of a fully-matured retirement plan.

$$\frac{2}{\text{\# years employed under plan as of date of divorce}} \qquad \text{spouse's share}$$

See Berry v. Berry, 647 S.W.2d 945, 946–47 (Tex.1983). This formula is called the *Berry* formula. The formula was set out by the Supreme Court in apportioning another plan that was not apportioned at divorce. *See Berry*, 647 S.W.2d at 945. At trial, evidence was presented concerning the value of Mr. Berry's retirement plan. *Id.* Thus, the value of the plan was in issue.

In the instant case, both sides agree that no evidence was presented at trial about the value of Gary's pension plan. Because no evidence was presented about value, the trial court could not apportion Gary's pension plan under the *Berry* formula. Instead, the trial court applied the *Taggart* formula. However, application of the *Taggart* formula can potentially divest Gary of separate property because the court's order does not clearly cut off Patricia's interest as of the date of the divorce. Additionally, the Supreme Court's apportionment in *Taggart* was based on the fully matured value of Mr. Taggart's retirement benefits. *See Taggart*, 552 S.W.2d at 424. Although it did not question the value of retirement benefits used in *Taggart*, the *Berry* Court was clear that retirement "benefits are to be apportioned based upon the value of the community's interest at the time of divorce." *Id.* at 947. Because Gary's plan will continue to grow in value after his divorce, the value of Gary's plan should have been determined at the time of divorce so that the *Berry* value could be used to apportion Gary's plan. For this reason, we sustain Gary's first two points of error.

### Possession and Visitation of the Albrechts' Son

█ The trial court's Final Decree of Divorce awards possession of the Albrechts' son to Gary from June 1st to December 1st, and to Patricia from December 1st to June 1st. The court's order provides for weekend visitation, but not for holiday visitation. In his third point of error, Gary complains that even though the jury determined that he was to serve as the joint managing conservator with primary care for his son, the trial court effectively stripped away his rights by giving possession of his son to Patricia for six months every year. This arrangement, Gary argues, effectively contravenes the verdict of the jury in respect to custody of his son and violates section 105.002 of the Family Code. To support his argument, Gary refers this court to the trial court's findings of fact and conclusions of law to illustrate his contention that the court simply disagreed with the jury about who was the better parent. At a minimum, Gary argues, the court's order should have provided for holiday visitation during the time period his son is with Patricia.

Patricia also relies on section 105.002 of the Family Code. Patricia, however, emphasizes the word "except" in the language of that section to support her contention that the trial court did not commit reversible error. At the time of the Albrechts' divorce, section 105.002 provided:

> The court may not render an order that contravenes the verdict of the jury, *except* with respect to the issues of the specific terms and conditions of possession and access to the child, . . . .

Tex. Fam.Code Ann. § 105.002(c) (Vernon 1996). Patricia argues that the court did not contravene the jury's verdict about which parent is to have primary care, but instead exercised its discretion in determining the terms and conditions of possession and access to the child.

Because section 105.002 gives the trial court discretion in setting the terms and conditions of possession, the trial court's possession order is reviewed under an abuse of discretion standard. *See Davis v. Davis*, 794 S.W.2d 930, 935 (Tex.App.—Dallas 1990, no writ) (specifying standard of review for challenges to conditions concerning possession and visitation of child). To determine if the trial court acted within its discretion in the instant case, we must determine whether Gary can serve as the joint managing conser-

vator with primary care of his son under the terms and conditions of the court's order. If he cannot serve effectively under the order's terms, the court will have abused its discretion.

The Family Code defines "joint managing conservatorship" as "the sharing of the rights and duties of a parent by two parties, ordinarily the parents, even if the exclusive right to make certain decisions may be awarded to one party." *Id.* § 101.016. In joint managing conservatorship, one parent is usually given slightly greater powers than the other parent. In particular, section 153.136 directs the court to designate the conservator who has the right to designate the child's primary physical residence. *See id.* § 153.136. Slightly greater power, however, does not necessarily require the court to give one parent more time with the child than the other parent. As a minimum, the parent without the power to designate the child's primary residence is entitled to the time specified in the standard possession order. *See id.* § 153.137. Equal time between parents is neither recommended nor prohibited. *See id.* § 153.135 (stating that joint managing conservatorship does not require equal periods of possession). Instead, the Code directs the court to consider the "best interests of the child" in awarding possession. *See id.* § 153.002.

In the instant case, the jury was asked, "who should be appointed as joint managing conservator of [the Albrechts' son], with primary care?" The court's charge, however, did not define "primary care." Instead, the charge specified the "Rights and Duties of Parent Appointed Joint Managing Conservator with Primary Care." In part, the charge instructed the jury that the joint managing conservator with primary care had the right to establish the primary residence of the child. Thus, the jury was required to determine who had the right to establish the primary residence of the child. In answer to this question, the jury answered "Gary Albrecht."

Consistent with the jury's verdict, the court's order awards Gary the "exclusive right to establish the primary physical residence of the child." But contrary to this right, the terms and conditions of the court's order establishes two primary residences for the Albrechts' son—one for the time period June 1st to December 1st, and another for the time period December 1st to June 1st. Under these circumstances, Gary cannot effectively serve as his son's primary caregiver because the conditions permit Patricia to establish the primary residence of the child for every other six-month time period. Because Gary cannot effectively serve as joint managing conservator under these conditions, we conclude that the trial court abused its discretion in setting the terms and conditions for possession of the child.

The possession order is also an abuse of discretion because its terms and conditions of possession are not in the best interest of the child. While the trial court has discretion to set the terms and conditions of possession, that discretion cannot be used to divide custody of a child when the jury has determined that the father will serve as primary care-giver. *See Davis,* 794 S.W.2d at 936. Like with the determination of conservatorship, the best interest of the child shall always be the primary consideration of the court when determining possession and access to a child. *See* FAM. CODE ANN. § 153.002 (Vernon 1996). Although the court's order in the instant case specifies reasons for deviating from the standard possession order, the terms and conditions of the order are not in the best interest of the child despite the trial court's findings.

The first reason the order is not in the best interest of the child is because the record reflects that the parents are unable to cooperate reasonably and meaningfully in matters relating to the upbringing of their son. *See* Richard A. Gardner, M.D., *Joint Custody Is Not for Everyone,* 5 FAM. ADVOC. 7, 8–9 (Fall 1982) (stressing need for cooperation between parents in joint custody arrangements). Although Gary and Patricia apparently agreed to joint managing conservatorship, their inability to cooperate will only be exacerbated if the child is required to alternate between his mother's residence and

his father's residence at six-month intervals.[2] Ultimately, these circumstances will place the child under unnecessary stress during a time when stability is needed to help the child adjust to the change in his family situation. *See* David J. Miller, *Joint Custody,* 13 FAM. L.Q. 345, 366–67 (1979) (emphasizing need for stability in child's life after divorce, and discussing instability that can arise from moving between parents' homes). Stress resulting from bi-annual moves from Gary's home to Patricia's home is not in the best interest of the child.[3]

Not only would this arrangement be stressful to the child, the arrangement is impractical because both parents work outside the home. As working parents, Gary and Patricia will be required to arrange child care at six-month intervals under the court's order. Working requires each parent to obtain a stable child care environment for six months and then to suspend those services for the next six months. We believe it is unlikely that either Gary or Patricia could obtain adequate child care services under these circumstances. *See Canning v. Canning,* 237 S.W.2d 1019, 1020 (Tex.Civ.App.—1951, no writ) (discussing problems associated with working parents in joint custody arrangement). Even if Gary and Patricia were each successful in obtaining a stable childcare arrangement for their respective six-month time periods, placing a child in a different childcare environment every six months is not in the best interest of the child.

In addition to the impracticalities imposed by alternating child care, the possession order is not in the best interest of the child because the logistics of school attendance make the arrangement disruptive.[4] Although the child was not school-aged at the time of the Albrechts' divorce, the consequences of divided custody will eventually be manifested in school attendance. In Texas, public school attendance is normally dictated by residency. If the parents reside in different school districts, the child would be required to attend different schools during the academic year. On a record that does not clearly reflect that both parents live in the same school district, we cannot approve an order that divides possession during the school term. *See Canning,* 237 S.W.2d at 1020 (reversing court order that divided child custody during school term). Because the terms and conditions of possession are not in the best interest of the child, we sustain Gary's third point of error.

### Conclusion

Having sustained Gary's first and second points of error, we reverse that part of the trial court's order awarding Patricia an interest in Gary's retirement plan and remand for a determination of the value of Gary's pension plan at the date of his divorce and for apportionment using the *Berry* formula. *Cf. May,* 716 S.W.2d at 712 (reversing and remanding for valuation of pension plan). Having sustained Gary's third point of error, we reverse the terms and conditions of the

**2.** *See* Richard A. Gardner, M.D., *Joint Custody Is Not for Everyone,* 5 FAM. ADVOC. 7, 9 (Fall 1982) (discussing psychological impact of warring parents on child); *see* CARLA B. GARRITY, PH.D, & MITCHELL A. BASIS, PH.D, CAUGHT IN THE MIDDLE: PROTECTING THE CHILDREN OF HIGH-CONFLICT DIVORCE 18 (1994) (writing that cooperative co-parenting allows children to cope successfully with divorce); David J. Miller, *Joint Custody,* 13 FAM L.Q. 345, 369 (1979) (stating that cooperation is required between parents for joint custody arrangement to work).

**3.** *See* MIRIAM GALPER COHEN, THE JOINT CUSTODY HANDBOOK: CREATING ARRANGEMENTS THAT WORK 110–11 (1989) (presenting major arguments against joint custody, and reporting that opponents of joint custody recommend a single home for children of divorced parents); Gary N. Skoloff, *Joint Custody: A Jaundiced View,* 20 TRIAL 52, 53–54

(March 1984) (questioning, in light of protracted litigation about decisions affecting children, the benefits of joint custody on children, and surmising that such arrangements are not necessarily in the best interests of the child).

**4.** *See* CARLA B. GARRITY, PH.D, & MITCHELL A. BASIS, PH.D, CAUGHT IN THE MIDDLE: PROTECTING THE CHILDREN OF HIGH-CONFLICT DIVORCE 17 (1994) (explaining effect of change in terms of stress on child with divorcing parents, and asserting that child benefits greatly from remaining in same home and attending same school after parents' divorce); Richard A. Gardner, M.D., *Joint Custody Is Not for Everyone,* 5 FAM. ADVOC. 7, 8 (Fall 1981) (recommending joint custody only when moving from home to home will not disrupt child's schooling, and asserting that this is generally possible when parents reside in same school district).

court's order that awards possession of the Albrecht child at six-month intervals and remand to the trial court to set terms and conditions that will provide a consistent and stable environment for the child, and still allow the child to see his mother frequently.

Concurring and dissenting opinion by ANGELINI, J.

ANGELINI, Justice, concurring and dissenting.

Because I agree with the majority that this case should be reversed and remanded for a proper determination of the value and apportionment of Gary's pension plan, I concur in part. But because I disagree with the majority's finding regarding the possession of the Albrecht's child and would affirm that portion of the trial court's order, I dissent in part.

The parties stipulated and agreed to "joint managing conservatorship" of the child. Under the Family Code joint managing conservatorship is defined as "the sharing of the rights and duties of a parent by two parties, ordinarily the parents, even if the exclusive right to make certain decisions may be awarded to one party." TEX. FAM. CODE ANN. § 101.106 (Vernon 1996).

In the court's charge to the jury, the trial judge instructed the jury concerning the rights of parents appointed as conservators of a child, tracking the wording of Section 153.073 of the Family Code. The trial court further instructed the jury as to the rights and duties of parents appointed as conservators during periods of possession, tracking Section 153.074 of the Family Code. The trial court then instructed the jury concerning the "rights and duties of parent appointed joint managing conservator with primary care" and proceeded to list those rights and duties specified under Section 153.132 of the Family Code. Notably, Section 153.132 actually lists the rights and duties of a parent appointed sole managing conservator. The jury was then asked to find who should be appointed "joint managing conservator of [the child], with primary care." The jury responded "Gary Albrecht." It should be noted that the Family Code does not include a definition for joint managing conservator with primary care.

Based upon the parties' stipulation to be named joint managing conservators, the trial court entered a Final Decree of Divorce in accordance with the stipulation. The decree then set forth the rights and duties of the parents, including an order that Gary have the exclusive right to establish the primary physical residence of the child. Although the jury had, by virtue of the definition given them of "joint managing conservator, with primary care," found that Gary should have all the rights and duties of a "sole managing conservator," the divorce decree actually awards all rights and duties of a "sole managing conservator" to *both* parents, with the exception of the right to establish the primary physical residence of the child. The possession order portion of the decree grants possession to each parent for six month periods of time with provisions for weekend visits during periods of nonpossession.

Gary does not complain about any of the rights and duties ordered by the court with the exception of the six-month split. Gary's specific complaint is that the trial court abused its discretion by entering a divorce decree in contravention of the jury's decision by imposing a possession order that took away the rights given Gary by the jury. Gary argues that the six-month split is inconsistent with the jury's finding that Gary should be appointed joint managing conservator with primary care. He contends that since he has the right to establish the child's primary residence, he must be awarded possession of the child for more than half of the time.

It would be difficult to find the trial court abused its discretion in entering a decree in contravention of the jury's verdict where there is *no definition* either in the Family Code or in case law for joint managing conservator with primary care. However, as stated above, the jury was given a definition which was, under the Family Code, the definition for sole managing conservator. The trial court could have awarded Gary all the rights and duties as given in the definition to the jury; however, she only granted him one—the right to establish the child's pri-

mary residence. Gary does not complain of the failure of the trial court to award the rights and duties of a "joint managing conservator, with primary care," as defined in the charge for the jury. By granting Gary the right to establish the child's primary residence, the trial court was, in fact, carrying out the will of the jury as expressed by their verdict. It was then up to the trial judge to determine proper periods of possession and access to the child. *See* TEX. FAM. CODE ANN. Section 153.134(b) (Vernon 1996).

Although Section 105.002 of the Family Code allows a jury trial in family law cases, subsection (c) of that section clearly provides that the court may render an order in contravention of the jury's verdict "with respect to the issues of the specific terms and conditions of possession of and access to the child, support of the child, and the rights, privileges, duties, and powers of sole managing conservators, joint managing conservators, or possessory conservators." Under subsection (c), the trial judge could have submitted or refused to submit issues to the jury and if she did so, the verdict would be advisory with regard to the terms and conditions of possession and access to the child. So, even assuming the six-month split is in contravention of the jury's verdict, the trial court had discretion to order a six-month split for possession of the child, regardless of the fact that the jury found Gary should be joint managing conservator with primary care. The question then becomes whether the trial court abused its discretion in awarding a six-month split even though Gary has the right to establish the primary residence of the child.

Obviously, only one parent can have the right to establish the primary residence of the child. To say that awarding equal periods of possession deprives that parent of establishing the primary residence of the child makes no sense. Establishing a residence does not equate to physical possession. Section 153.135 of the Family Code provides that joint managing conservatorship "does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conser-

vators." TEX. FAM.CODE ANN. § 153.135 (Vernon 1996). And, when parties are named joint managing conservators, the Family Code provides that the standard possession order contained within the Family Code constitutes a presumptive minimum amount of time for possession of a child by a joint managing conservator who is not awarded physical residence of the child. Nothing in these sections or any other section of the Family Code, however, precludes the court from ordering equal amounts of time for possession and access.

The majority finds that because Gary has the right to establish the primary residence of the child, he must be given physical possession of the child for greater than fifty percent of the time. The exclusive right to select the child's domicile, however, does not require the parent with that right to have possession for greater than fifty percent of the time. *See Dennis v. Smith*, 962 S.W.2d 67 (Tex.App.—Houston [1 st Dist.] 1997, pet. denied) (holding there is no presumption that the conservator with the longer period of possession should decide where a child lives or goes to school). Thus, I would conclude the trial court did not abuse its discretion or contravene the jury's verdict in ordering a six-month split.

In addition to finding that the trial court's decree contravenes the jury verdict, the majority also finds that the trial court's deviation from the standard possession order was not in the best interest of the child. Although the best interest of the child should always be a matter of utmost concern, Gary has not argued that the six-month split is in derogation of the child's best interest. Nevertheless, without a Reporter's Record, we do not have access to the evidence the court heard with regard to the best interest of the child and, therefore, are unable to tell whether the trial judge abused her discretion.

Furthermore, the majority's discussion indicates that the problem is not so much with the six-month split as it is with naming the parents as joint managing conservators. However, the parties agreed to a joint managing conservatorship and have no complaint, with the exception of the six-month split, regarding the rights and duties given them

under the decree. An example of the concerns raised by the majority pertains to the child's residence for school attendance purposes. The majority states that because the child will have two residences by virtue of living six months a year in one home and six months a years in another, problems will arise when he begins school because the child will be forced to attend two different schools. However, this should not be a concern since the right given to Gary to establish the child's primary residence will determine which school the child attends. Even though the child will live six months with Gary and six months with his mother, his primary residence will still be with Gary.

For the reasons stated above, I do not believe the trial court abused its discretion in entering the possession order contained in the divorce decree.