**Opinion issued November 28, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00409-CV

———————————

## IN THE INTEREST OF A.I.M. AND A.I.M., CHILDREN

On Appeal from the 246th District Court
Harris County, Texas
Trial Court Case No. 2015-52596

## MEMORANDUM OPINION

This appeal stems from competing Petitions to Modify the Parent Child-Relationship. Following a jury trial, the trial court entered a final judgment designating Appellee Isaac Menendez as the parent with the right to designate the primary residence of two minor children, awarding Appellant Claudia Arellano a standard possession order, and ordering Appellant to pay child support. The trial court later reformed its final judgment to vacate the prior designation of Appellee

as the primary conservator. All other terms of the initial judgment remained the same.

Appellant raises two issues on appeal. In her first issue, Appellant challenges the trial court's initial judgment designating Appellee as the parent with the exclusive right to designate the primary residence of the children. Premised on her argument that the trial court's subsequent reformed order is void, Appellant argues (1) we should reverse the initial order and vacate the designation of Appellee as the parent with the right to determine the primary residence of the children, consistent with the trial court's reformed order, and thereafter "consider the balance of this appeal," or (2) in the alternative, hold that the jury's verdict was incomplete and remand the case to the trial court for further proceedings. In her second issue, Appellant argues the trial court impermissibly contravened the jury verdict and abused its discretion by awarding her a standard possession order over the children and ordering her to pay child support.

We hold the Reformed Order is not void, and affirm the Reformed Order.

## Background

In 2016, the trial court entered an Agreed Final Decree of Divorce ("Agreed Decree") with respect to the marriage of Appellant Claudia Menendez[1] and Appellee Isaac Menendez. Among the terms of the Agreed Decree, which

---

[1] Claudia's last name is now Arellano.

appointed Claudia and Isaac joint managing conservators of their two minor sons,[2] the Agreed Decree provided that (1) neither parent would have the right to designate the primary residence of the children, (2) the primary residence of the children would remain within eight miles of the Galena Park Independent School District, (3) the parental rights and duties of the parties would be shared equally, (4) the parties would have equal possession of the children, and (5) Isaac would pay child support to Claudia.

Three years later, in 2019, Claudia filed a Petition to Modify the Parent-Child Relationship, requesting she be appointed sole managing conservator and that Isaac be denied access to the children or, in the alternative, that his visitation with the children be supervised. Claudia alleged Isaac had "engaged in a history or pattern of child abuse and neglect" and she requested the trial court to consider such conduct in appointing her "sole managing conservator or the parties as joint managing conservators." Claudia requested the trial court to enter temporary orders appointing her and Isaac temporary joint managing conservators and designating Claudia as the conservator with the exclusive right to designate the primary residence of the children. After a contested hearing, the trial court granted temporary orders, appointing Claudia as temporary sole managing conservator

---

[2]     Claudia and Isaac have three sons. This appeal concerns their two younger sons, who were minors during trial.

over the children, awarding Isaac supervised possession of the children, and ordering Isaac to pay child support.

Isaac filed a Counter-Petition to Modify the Parent-Child Relationship. He sought the exclusive right to designate the primary residence of the children and requested that the children be required to reside within Harris County, Texas and all contiguous counties. Isaac further requested that he be appointed as the conservator with "the exclusive right to make medical decisions, psychiatric and psychological decisions[,] and educational decisions," that Claudia be given a standard possession order to provide "a more stable environment for the children," and that Claudia be ordered to pay child support. Isaac demanded a jury trial pursuant to Section 105.002 of the Texas Family Code.[3]

A jury trial commenced on July 26, 2021, and continued for several days over the course of four months.[4] While twelve jurors and two alternates were seated originally, three of those jurors were dismissed by agreement during trial. The parties agreed that nine of the eleven remaining jurors could return a verdict. The jury charge, to which no one objected, asked the jury to answer the following four questions:

---

[3]     An amicus attorney was also appointed.

[4]     Because the facts elicited during the trial have no bearing on this appeal, we do not discuss them.

4

**Question 1**

Should the joint managing conservatorship be replaced by a sole managing conservatorship of the children?

Answer "Yes" or "No."  Answer: _____

If you answered "Yes" to Question 1, then answer Question 2. Otherwise, do not answer Question 2.

If you answered "No" to Question 1, then answer Question 3. Otherwise, do not answer Question 3.

**Question 2**

Who should be appointed sole managing conservator of the children? Answer by writing the full name of the person who should be appointed.

Answer "Isaac Menendez" or "Claudia Arellanos."  Answer: _____

**Question 3**

Should the order that does not designate a conservator to have the exclusive right to designate the primary residence of the children be modified to designate either parent as the conservator who has the exclusive right?

Answer "Yes" or "No."  Answer: _____

If you answered "Yes" to Question 3, then answer Question 4. Otherwise, do not answer Question 4.

**Question 4**

State the name of the parent who is awarded the exclusive right to designate the primary residence of the children within Harris County, Texas and contiguous counties.

Answer "Isaac Menendez" or "Claudia Arellanos."  Answer: _____

5

The jury answered "No" to Jury Questions 1 and 3, and left the answers to Jury Questions 2 and 4 blank. The trial court accepted the verdict without objection and released the jurors.

Sometime after the verdict was rendered, but before rendering final judgment, the trial court interviewed the minor children over Claudia's objection.[5] The docket sheet reflects that on January 14, 2022, the trial court rendered judgment "in the best interest of the children," ordering, among other things, that (1) both parents remain joint managing conservators of the children, but that Isaac be granted the exclusive right to designate the primary residence of the children within Harris County and contiguous counties, (2) Claudia be granted a standard possession order, (3) Claudia and Isaac have the joint right to make medical, psychological, and psychiatric decisions for the children, (4) Isaac be granted the right to make education decisions for the children after consultation with Claudia, and (5) Claudia pay Isaac child support. The trial court signed its Final Order in Suit to Modify Parent-Child Relationship ("Initial Order") on February 27, 2022. The Initial Order recites that the "Jury rendered a verdict and the Court rendered a

---

[5]   Isaac filed a Motion for the Court to Confer with Children on June 29, 2020. According to the docket sheet, the trial court granted the motion after a hearing on November 30, 2021. It is unclear when the children were interviewed. There is no reporter's record of the hearing or the interview in the appellate record.

6

rendition on January 14, 2022 relative to [the parties'] rights and duties, possession and access, support, and various issues."

Claudia filed a Motion to Modify, Correct, or Reform the Judgment or, in the Alternative, for New Trial. She argued that by awarding Isaac the exclusive right to designate the primary residence of the children, the trial court's Initial Order contravened the jury's verdict in violation of Section 105.002(c)(1)(D) of the Texas Family Code. She also argued that the trial court's order awarding her a standard possession order "operated as a *de facto* contravention of the verdict" because the possession schedule "effectively *award[ed]* the residence right" to Isaac "in contravention of the jury's verdict."[6]

In response, Isaac argued the Initial Order did not contravene the jury's verdict because the jury had not determined "which parent should have [the primary] residence right." He argued that Section 153.134(b)(1) of the Texas Family Code requires a trial court to designate the parent with the exclusive right to designate the primary residence of the children. Because "the jury did not choose which parent should have" that right and the law is conclusive that a parent

---

[6]     Claudia also argued the trial court erred by accepting a verdict from fewer than ten jurors and by interviewing the children in chambers. In response, Isaac argued Claudia had waived her right to complain about the number of jurors and that the court was within its rights to interview the children about possession and access, which are not jury issues. During the hearing on her Motion to Modify, Claudia withdrew the complaint about the number of jurors. And Claudia does not complain about the trial court's interview of the children on appeal.

must be chosen, he argued the trial court did not contravene the jury's verdict, but instead followed the law. Isaac also responded that the trial court's judgment awarding Claudia a standard possession order and ordering her to pay child support did not contravene the jury's verdict because pursuant to Section 105.002(c)(2)(B) of the Family Code, the trial court "has the sole authority in rendering possession of or access to the child."

Isaac also filed a Motion to Disregard Jury Finding No. 3,[7] arguing the jury's answer to Jury Question 3 was immaterial.[8] Isaac argued that because both parents had filed competing pleadings requesting the right to determine the primary residence of the children, they had in effect "judicially admitted there had been a substantial and material change of circumstances" and thus a modification of the Agreed Decree was necessary. Isaac argued the law "is conclusive that a parent ha[s] to be given the residency right," and the evidence at trial was "conclusive"

---

[7] In Jury Question 3, the jury was asked to determine whether the parties' Agreed Decree which did "not designate a conservator to have the exclusive right to designate the primary residence of the children [should] be modified to designate either parent as the conservator who has the exclusive right." The jury answered, "No."

[8] A question is immaterial "(1) if the question should not have been submitted; (2) if the question was rendered immaterial by other findings, or (3) if the question called for a finding not within the jury's province, such as presenting a question of law for the court." *Desai v. Good Hope Missionary Baptist Church of Houston*, No. 01-19-00420-CV, 2021 WL 1414282, at *4 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021, pet. denied) (mem. op.) (citing *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 140 (Tex. App.—Houston [1st Dist.] 2003, no pet.)).

that he should be awarded the right to determine the children's primary residency. Isaac asked the trial court to disregard the jury's verdict as to Jury Question 3 and enter judgment appointing him as the conservator with the exclusive right to designate the children's primary residence.

On May 4, 2022, the trial court conducted a hearing on Claudia's Motion to Modify and Isaac's Motion to Disregard. The trial court denied Isaac's motion and granted Claudia's motion in part, vacating the designation in the Initial Order of Isaac as the parent with the exclusive right to designate the children's primary residence. At the conclusion of the hearing, the trial court made the following rendition from the bench:

> The Court finds that it erred in contravening the jury's verdict regarding the granting of exclusive right to designate the primary residence of the children and sets aside the designation of the right to determine the primary residence of the children. However, the Court, in crafting possession and access orders, took into consideration several considerations, including the fact that the mother in this case moved over an hour away from the father rendering a standard possession order, including overnights during the schooltime, virtually impossible. So, the Court finds that the following orders are in the best interest of the children: Neither parent is granted the exclusive right to determine the residence of the children, which complies with the verdict of the jury. Mom is granted a standard possession order that is not expanded. The Court finds that it is not in the best interest of the children for Mom to be granted an expanded standard possession order. All of the other portions of the rendition will remain the same . . . .

The trial court's docket sheet entry for May 4, 2022, states in pertinent part:

9

RENDITION–The Court erred in contravening the jury's verdict regarding the granting of the exclusive right to designate the primary residence of the children and sets aside the designation of the right to determine the primary residence of the children.

The Court finds that the following orders are in the best interest of the children. Neither parent is granted the exclusive right to determine the residence of the children. Mom is granted an SPO, not expanded. Court finds that it is not in the best interest of children to grant expanded SPO. Parents are granted joint right to make psychological and psychiatric decisions for children, with treating physician to serve as tie-breaker. Dad is granted exclusive right to make education decisions for children, after consultation with mom . . . .

On June 14, 2022, the trial court signed a Reformed Final Order in Suit to Modify the Parent-Child Relationship ("Reformed Order") reflecting the court's May 4, 2022 oral rendition.

This appeal ensued.

**Standard of Review and Applicable Law**

Pursuant to Section 105.002 of the Texas Family Code, a party may demand a jury trial over certain matters involving conservatorship. TEX. FAM. CODE § 105.002(a). A court may not submit questions to the jury concerning support or "a specific term or condition of possession of or access to [a] child." *Id.* § 105.002(c)(2)(B). A party, however, is entitled to have a jury determine the appointment of conservators, the parent with the right to designate the primary residence of the child, and the need for any geographic restrictions for the primary residence of the children. *Id.* § 105.002(c)(1). Section 105.002(c) states that in a

10

jury trial, a party is entitled to a verdict by the jury and the court may not contravene a jury verdict on the issues of:

> (A)    the appointment of a sole managing conservator;
>
> (B)    the appointment of a joint managing conservator;
>
> (C)    the appointment of a possessory conservator;
>
> (D)    the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child;
>
> (E)    the determination of whether to impose a restriction on the geographic area in which a sole managing conservator or joint managing conservator may designate the child's primary residence; and
>
> (F)    if a restriction described by Paragraph (E) is imposed, the determination of the geographic area within which the sole managing conservator or joint managing conservator must designate the child's primary residence[.]

*Id.* § 105.002(c).

A trial court is not permitted to contravene a jury verdict on the issues of conservatorship or residence unless the jury's findings are not supported by the evidence. *Lenz v. Lenz*, 79 S.W.3d 10, 20 (Tex. 2002). The jury's verdict on determination of residence is reviewed for legal and factual sufficiency. *Epps v. Deboise*, 537 S.W.3d 238, 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Ellason v. Ellason*, 162 S.W.3d 883, 888 (Tex. App.—Dallas 2005, no pet.)

11

(holding complaints regarding trial court's disregard of evidence are properly brought as challenges to legal or factual sufficiency of evidence).[9]

A trial court has broad discretion in determining family law matters involving custody, visitation, and possession. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [l4th Dist.] 2009, no pet.). A party who seeks to modify an existing possession has the burden of proving the "circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the date of its rendition. TEX. FAM. CODE § 156.101(a); *see also id.* § 156.401(a)(1). The trial court's primary consideration in determining such matters is the best interest of the child. *In re A.L.E.*, 279 S.W.3d at 427; *Hammond v. Hammond*, 898 S.W.2d 406, 407 (Tex. App.—Fort Worth 1995, no writ). The trial court has substantial latitude to determine such matters. *Escalante v. Escalante*, 632 S.W.3d 573, 581 (Tex. App.—El Paso 2020, no pet.); *In re A.L.E.*, 279 S.W.3d at 427.

---

[9] Claudia states on appeal that "nobody has challenged the sufficiency of the evidence to support the verdict . . . . Thus, the sufficiency of the evidence to support the verdict is not in dispute." *See Garcia v. Harding*, No. 01-07-01049-CV, 2008 WL 4965358, at *3 (Tex. App.—Houston [1st Dist.] Nov. 20, 2008, no pet.) (mem. op.) ("[A] jury's findings underlying a conservatorship decision are subject to ordinary legal and factual sufficiency review.") (citing *Alexander v. Rogers*, 247 S.W.3d 757, 761 (Tex. App.—Dallas 2008, no pet.)). Later in her brief, Claudia identifies without analysis eleven record excerpts that she argues contain "at least some" evidence supporting her request to be designated as primary conservator. Because neither party raised a sufficiency challenge on appeal, we do not review the sufficiency of the evidence in support of the jury's verdict or the trial court's standard possession order.

We review the modification of a possession order or child support obligations for abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re T.W.E.*, 217 S.W.3d 557, 559 (Tex. App.—San Antonio 2006, no pet.); *In re Moore*, 511 S.W.3d 278, 283 (Tex. App.—Dallas 2016, no pet.). The test for an abuse of discretion "is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford*, 801 S.W.2d at 109. If the trial court fails to analyze or apply the law correctly, it abuses its discretion. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

## Analysis

### A. The Reformed Order is Not Void

Claudia argues that "despite being rendered before the trial court lost plenary power," the Reformed Order was "entered shortly after the court lost plenary power" and thus, "the Reformed [Order] is likely void." Premised on her argument that the Reformed Order is void, Claudia argues in her first issue that she is entitled to final judgment based on the jury's verdict, and thus, the trial court's award in the Initial Order appointing Isaac as the primary conservator with the exclusive right to determine residency should be reversed. Alternatively, Claudia argues the jury's verdict that neither party should be given the exclusive right to determine the

13

primary residence of the children is incomplete, and we should thus vacate the Initial Order and remand for further proceedings.

Isaac responds that the Reformed Order vacating his designation as primary conservator with the exclusive right to designate the primary residence of the children is not void because oral rendition of the Reformed Order was made on May 4, 2022, within the trial court's plenary power, and the trial court's act of committing it to writing on June 14, 2022 was "purely a ministerial act." Because the Reformed Order is not void and supersedes the Initial Order, Isaac argues Claudia's first issue, which challenges the Initial Order, is moot. In the alternative, he argues the Initial Order does not contravene the jury's verdict, because the jury did not determine which parent would have the exclusive right to designate the primary residence of the children, and under applicable law, the trial court was required to make that designation.

Generally, a judgment is "rendered" when the trial court's decision upon a matter "is officially announced either orally in open court or by memorandum *filed* with the clerk." *Pletcher v. Hansen*, No. 01-09-00516-CV, 2011 WL 1631811, at *5 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, no pet.) (mem. op.) (citing *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 315 n.5 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (emphasis in original); *see also State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) ("A court's judgment is its announcement of the

resolution of the issues in a lawsuit and is rendered 'when the trial court officially announces its decision in open court or by written memorandum filed with the clerk.'") (quoting *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995)); *In re K.N.M.*, No. 2-08-308-CV, 2009 WL 2196125, at *5 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.) ("Judgment is 'rendered' when the trial court officially announces its decision on the matter submitted to it in open court or by written memorandum filed with the clerk.").

The Texas Family Code defines "render" in a suit affecting the parent-child relationship as "the pronouncement by a judge of the court's ruling on a matter. The pronouncement may be made orally in the presence of the court reporter or in writing, including on the court's docket sheet or by a separate written instrument." TEX. FAM. CODE § 101.026. To be an official judgment, "the trial court's oral pronouncement must indicate intent to render a full, final, and complete judgment at that point in time." *In re Marriage of Joyner*, 196 S.W.3d 883, 886 (Tex. App.—Texarkana 2006, pet. denied) (citing *S & A Rest. Corp.*, 892 S.W.2d at 858); *McShane v. McShane*, 556 S.W.3d 436, 442 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (same) (citing *Gamboa v. Gamboa*, 383 S.W.3d 263, 270 (Tex. App.—San Antonio 2012, no pet.). The words of the trial court, regardless of whether they are spoken or written, "must evince a present, as opposed to future, act that effectively decides the issues before the court." *In re Marriage of Joyner*,

15

196 S.W.3d at 886 (citing *Woods v. Woods*, 167 S.W.3d 932, 933 (Tex. App.—Amarillo 2005, no pet.)); *see also In re M.G.F.*, No. 2-07-241-CV, 2008 WL 4052992, at *2 (Tex. App.—Fort Worth Aug. 28, 2008, no pet.) (mem. op.) ("The words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed.") (citing *S & A Rest Corp.*, 892 S.W.2d at 858).[10]

In suits affecting the parent-child relationship, docket sheet entries may establish that a trial court orally rendered judgment on a certain date. TEX. FAM. CODE § 101.026; *see also Interest of P.Z.F.*, 651 S.W.3d 147, 152 (Tex. App.—Dallas 2021, pet. denied) ("Generally docket sheet entries are insufficient to constitute a decree of the court; however, the [F]amily [C]ode alters this general rule in suits affecting the parent-child relationship[.]");[11] *Interest of G.X.H.*, 627 S.W.3d 288, 298 (Tex. 2021) ("Family Code section 101.026 expressly provides that a court may pronounce or render an order on its docket sheet."); *In re C.V.G.,*

---

[10] For example, when a trial court stated in rendering judgment that the court "*will* approve the agreement" and "*will* sign a written order to that effect," the Fort Worth Court of Appeals held the trial court's "oral pronouncement of its intention to render judgment in the future could not be a present rendition of judgment." *In re M.G.F.*, No. 2-07-241-CV, 2008 WL 4052992, at *3 (Tex. App.—Fort Worth Aug. 28, 2008, no pet.) (mem. op.).

[11] Section 101.032 of the Family Code defines "suit affecting the parent-child relationship" in pertinent part as "a suit filed . . . in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested." TEX. FAM. CODE § 101.032(a). "A motion to modify the parent-child relationship is a suit affecting the parent-child relationship[.]" *Chalu v. Shamala*, 125 S.W.3d 737, 738 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

16

112 S.W.3d 180, 185 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (Mirabal, J., concurring) ("Thus, contrary to the general rule in civil cases, a docket notation standing alone constitutes rendition of judgment in suits affecting the parent-child relationship").

During the May 4, 2022 hearing, the trial court made the following rendition from the bench:

> The Court finds that it erred in contravening the jury's verdict regarding the granting of exclusive right to designate the primary residence of the children and sets aside the designation of the right to determine the primary residence of the children. However, the Court, in crafting possession and access orders, took into consideration several considerations, including the fact that the mother in this case moved over an hour away from the father rendering a standard possession order, including overnights during the schooltime, virtually impossible. So, the Court finds that the following orders are in the best interest of the children: Neither parent is granted the exclusive right to determine the residence of the children, which complies with the verdict of the jury. Mom is granted a standard possession order that is not expanded. The Court finds that it is not in the best interest of the children for Mom to be granted an expanded standard possession order. All of the other portions of the rendition will remain the same . . . .

The trial court's docket sheet for May 4, 2022 also states in pertinent part:

> RENDITION–The Court erred in contravening the jury's verdict regarding the granting of the exclusive right to designate the primary residence of the children and sets aside the designation of the right to determine the primary residence of the children.
>
> The Court finds that the following orders are in the best interest of the children. Neither parent is granted the exclusive right to determine the residence of the children. Mom is granted an SPO, not expanded. Court finds that it is not in the best interest of children to grant

17

expanded SPO. Parents are granted joint right to make psychological and psychiatric decisions for children, with treating physician to serve as tie-breaker. Dad is granted exclusive right to make education decisions for children, after consultation with mom. Parents ordered to subscribe to Talking Parents app and communicate regarding the children through the app. Mom ordered to pay child support of $823.64/month beginning 3/1/22, with step down. Dad ordered to carry medical and mom ordered to reimburse dad $200/month beginning 3/1/22, with step down. Order entry 5/20/21, by submission.

Both the trial court's May 4, 2022 oral rendition and the corresponding docket sheet evince an intent for the judgment to be a full, final and complete judgment at that point in time. The trial court's rendition on May 4, 2022 effectively decided the issues before the court, and left nothing to be decided at a future date. We thus conclude that the trial court's May 4, 2022 rendition, made within the court's plenary power, was a final judgment, and the act of committing it to writing on June 14, 2022 was merely a ministerial act. *See In re E.G.*, No. 14-14-00967-CV, 2016 WL 1128137, at \*2 (Tex. App.–Houston [14th Dist.] Mar. 22, 2016, no pet.) (mem. op.) ("A trial court's oral pronouncement of its decision terminating a parent-child relationship constitutes the rendition of a final judgment. In the case of an oral rendition, the judgment is effective immediately, and the signing and entry of the judgment are only ministerial acts.") (internal citations omitted); *P.R.M. v. Tex. Dep't of Family & Protective Servs.*, No. 03-16-00065-CV, 2016 WL 4506301, at \*3 (Tex. App.—Austin Aug. 26, 2016, no pet.) (mem. op.) ("When a trial court announces in open court that a parent's rights are

terminated, the termination is effective immediately, and the written order signed later by the trial court merely memorializes the termination.") (citing TEX. FAM. CODE § 101.026).

Because we conclude the Reformed Order is not void, and the Reformed Order vacates the portion of the Initial order Claudia challenges in her first issue, we overrule Claudia's first issue.

## B.     The Right to Designate Primary Residence

In the trial court, Claudia moved to modify the Initial Order to request that neither party be awarded the exclusive right to designate the primary residence of the children.  She argued that the designation in the Initial Order awarding Isaac that exclusive right contravened the jury's verdict.

Section 153.134(b) of the Family Code, entitled Court-Ordered Joint Conservatorship, provides that "[i]n rendering an order appointing joint managing conservators, the court shall . . . designate the conservator who has the exclusive right to determine the primary residence of the child . . . ."  TEX. FAM. CODE § 153.134(b); *see also Billisits v. Billisits*, No. 03-21-00358-CV, 2023 WL 2191330, at *2 (Tex. App.—Austin Feb. 24, 2023, no pet.) (mem. op.) ("When a trial court appoints the parents joint managing conservators, it must designate the parent with the exclusive right to determine the child's primary residence and specify either the geographic area for the child's primary residence or that the

child's primary residence may be without regard to geographic location."). "That the order must include a residence provision . . . does not affect a party's right to have the primary residence issue determined by a jury." *See Lenz*, 79 S.W.3d at 21 (citing TEX. FAM. CODE § 105.002); *Garcia v. Harding*, No. 01-07-01049-CV, 2008 WL 4965358, at *4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2008, no pet.) (mem. op.) ("The fact-finder designates which managing conservator will have the exclusive right to designate the child's primary residence.") (citing TEX. FAM. CODE § 153.134(b)(1)).

In her Motion to Modify the Initial Order, Claudia rejected the application of Section 153.134, arguing instead that Section 153.133 is the relevant provision. Under Section 153.133 of the Texas Family Code, a trial court need not appoint a parent with the right to determine a child's primary residence if the parents have adopted an agreed parenting plan that, among other things,[12] provides that "the child's primary residence shall be within a specified geographical area." *See* TEX. FAM. CODE §§ 153.133(c), 153.601(4) (defining parenting plan). Claudia argued that because the parties' 2016 Agreed Decree was agreed and identified a

---

[12] *See* TEX. FAM. CODE § 153.601(4) (defining "parenting plan" as "the provisions of a final court order that (A) set out rights and duties of a parent or a person acting as a parent in relation to the child; (B) provide for periods of possession of and access to the child, which may be the terms set out in the standard possession order under Subchapter F and any amendments to the standard possession order agreed to by the parties or found by the court to be in the best interest of the child; (C) provide for child support; and (D) optimize the development of a close and continuing relationship between each parent and the child.").

geographic area for the children's residence and the trial court did not "render an order appointing joint managing conservators," Section 153.133, and not 153.134 applied. *See* TEX. FAM. CODE § 153.133(c). She argued then, and argues now, that the Initial Order's designation of Isaac as the primary conservator with the exclusive residence right should be vacated.

Isaac resisted Claudia's Motion to Modify in the trial court, arguing the trial court's designation of Isaac as the primary conservator with the exclusive right to designate the primary residence of the children in the Initial Order was not erroneous because Section 153.134(b) of the Texas Family Code requires a trial court to designate a joint conservator with that exclusive right. He made the same argument in his Motion to Disregard Jury Question 3, asking the trial court to grant him the exclusive right to designate the primary residence of the children.

The trial court denied Isaac's Motion to Disregard, granted Claudia's Motion to Modify in part, and issued the Reformed Order vacating the prior designation of Isaac as the primary conservator with the right to designate the primary residence of the children.[13] While both parties presented arguments for and against the

---

[13] Like the Initial Order, the Reformed Order provides that Claudia and Isaac are to "remain Joint Managing Conservators" of the children. And it further provides that "the primary residence of the children shall be within Harris County, Texas and contiguous counties, and the parties shall not remove the children" from the designated geographic area "for the purpose of changing the primary residence of the children until this geographic restriction is modified by further order of the court . . . ."

21

designation of Isaac as the parent with the right to designate the primary residence of the children in the trial court's Initial Order, neither Claudia nor Isaac challenge the Reformed Order's removal of that designation on appeal. Indeed, in its Reformed Order, the trial court awarded Claudia the relief she requested as to the residence right, and she does not appeal that portion of the Reformed Order on appeal. Isaac likewise did not cross-appeal the denial of his Motion to Disregard nor does he complain on appeal about the Reformed Order. To the contrary, he argues the Reformed Order is not void and should be affirmed in all respects.

Because we have concluded the Reformed Order is not void, and neither party challenges the Reformed Order on appeal as it concerns the removal of Isaac as the parent with the residency right, we do not address the parties' arguments concerning the application of Section 153.134(b) or 154.133. Those arguments were made solely in connection with the Initial Order, and no party has raised that issue on appeal as to the Reformed Order. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("[T]he courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error."); *see also London v. London*, 94 S.W.3d 139, 150–51 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (overruling appellant's argument trial court violated Section 153.134(b) of Family Code in its final judgment because appellant did not preserve that issue for appeal);

*One Call Sys., Inc. v. Houston Lighting & Power*, 936 S.W.2d 673, 677 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding adverse ruling is required to preserve issue on appeal).

We overrule Claudia's first issue.

## C.      The Standard Possession Order

In the Reformed Order, the trial court awarded Claudia a standard possession order and it ordered her to pay child support to Isaac.  In her second issue, Claudia argues the trial court abused its discretion in awarding a standard possession order that "effectively awarded to Isaac the right to determine the children's primary residence, in contravention of the jury's verdict, by giving him significantly more time with the children."[14]   Claudia does not challenge the sufficiency of the evidence supporting the trial court's possession order.  She merely argues the Reformed Order is erroneous because it contravenes the jury's verdict as to primary residence.  Isaac responds that the standard possession order does not contravene the jury's verdict because the Reformed Order does not award either party the right to designate the children's primary residence.

---

[14]      Claudia does not analyze any child support issues in her brief.  She merely states that "the possession order likely impacted the trial court's determination of the remaining issues, including allocation of rights and duties and child support. Accordingly, Claudia requests the Court remand the case on the remaining issues in the order as well."

"[A] trial court's possession order may not stand when it effectively contravenes a jury's finding regarding a parent's right to establish a child's primary residence." *In re Z.K.S.*, No. 13-19-00011-CV, 2020 WL 103864, at \*4 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, no pet.) (mem. op.) (citing TEX. FAM. CODE § 105.002(c)(1)); *Albrecht v. Albrecht*, 974 S.W.2d 262, 265 (Tex. App.— San Antonio 1998, no pet.)). "Once a jury decides the foundational issues such as conservatorship and the right to establish primary residence, the trial court determines the attendant terms and conditions." *In re Z.K.S.*, 2020 WL 103864 at \*3. Claudia relies on *Albrecht v. Albrecht*, *In re Z.K.S.*, and *Lenz v. Lenz* in arguing the standard possession order contravenes the jury's verdict regarding primary residence. We find all three cases inapposite.

In *Albrecht*, a jury determined the father should have the right to designate his child's primary residence. 974 S.W.2d at 265. Notwithstanding, the trial court awarded the father possession of the child from June 1 through December 1 each year, and the mother possession of the child the remaining six months. *Id.* at 264. The father argued that even though the jury had awarded him the right "to serve as the joint managing conservator with primary care for his son, the trial court effectively stripped away his rights by giving possession of his son" to the mother for six months each year. *Id.* The court of appeals agreed, holding the trial court's possession order contravened the jury's determination that the father had the right

24

to establish the child's primary residence because the father could not "effectively serve as joint managing conservator under these conditions." *Id.* at 265. Thus, the appellate court held the trial court abused its discretion in "setting the terms and conditions for possession of the child." *Id.*

In *In re Z.K.S*, a jury awarded the mother the exclusive right to designate the child's primary residence within the State of Texas. 2020 WL 103864 at *1. After a bench trial, the trial court issued a possession order providing the father, who lived 240 miles from the mother, with a "week on/week off" possession until the child turned five and started kindergarten, at which time the father's possession would be governed by a standard possession order. *Id.* at *1, 3. The mother appealed, contending the trial court's "week on/week off" order contravened the jury's determination that she would have the exclusive right to designate the child's primary residence. *Id.* at *3. The appellate court concluded that the "week-on/week-off" order contravened the jury's finding "because it effectively establishe[d] two primary residences for Z.K.S., separated by 240 miles." *Id.* at *5. Thus, the court of appeals held the trial court's possession order "impermissibly contravene[d] the jury's verdict" and could not stand. *Id.*

Finally, in *Lenz* the Supreme Court considered whether the trial court's imposition of a geographic restriction on the children's primary residence contravened the jury's verdict on residency. 79 S.W.3d at 11. The mother in *Lenz*

25

sought modification of her divorce decree to remove a Texas residency restriction so that she could move with the children to Germany. *Id.* at 12. The jury determined the mother should have the exclusive right to determine the children's primary residence. *Id.* In its final order, however, the trial court allowed the mother to establish the children's primary residence provided the children lived in Bexar County, Texas. *Id.* at *13. The court of appeals affirmed the trial court's order. *Id.* But the Supreme Court reversed and remanded, holding that by imposing its own primary residence restriction, "the trial court rejected the jury's verdict giving [the mother] the exclusive right to decide her sons' primary residence and granted the alternative remedy [the father] sought in his motion, which was to restrict the children's primary residence to Bexar County."[15] *Id.* The Supreme Court stated that, pursuant to Section 153.134 of the Family Code, the trial court was required "to include certain provisions in its order appointing joint managing conservators." *Id.* at *21. The requirement that "the order must include a residence provision . . . does not affect a party's right to have the primary residence issue determined by a jury." *Id.* (citing TEX. FAM. CODE § 105.002). Although Section 153.134 required the trial court to include a residence provision

---

[15]     In *Lenz*, the Supreme Court conducted a legal sufficiency review to determine whether the evidence supported the jury's verdict, which allowed the mother the right to determine the children's residence. *Lenz v. Lenz*, 79 S.W.10, 17 (Tex. 2002). As noted, neither party in the present case questions the sufficiency of the evidence that led to the jury's verdict or the trial court's possession order.

in its order, "the provision had to be in accord with the jury's verdict giving [the mother] the exclusive right to determine her children's primary residence." *Id.*

*Albrecht*, *In re Z.K.S.*, and *Lenz* do not support Claudia's position. In each of those cases, the jury determined which parent should have the right to determine the children's primary residence and awarded that exclusive right to either the father or the mother. Contrary to the jury's specific award, in each of the cited cases the trial court issued orders contravening the jury's residency finding. Unlike in *Albrecht*, *In re Z.K.S.*, and *Lenz*, the jury in this case did not award *any* parent the exclusive right to designate the primary residence of the children. There was thus no jury finding on residency for the court to contravene. Claudia has not directed us to, and we have not located, any case in which the jury opted not to designate a parent to determine a child's primary residence and the trial court issued a possession order found to contravene the jury's determination.[16]

Claudia's argument suggests she considers the jury's verdict that the Agreed Decree should not be modified to designate either parent as the conservator with the right to designate the children's primary residence to be an order for shared possession of the children. But as Isaac correctly argues, only the trial court may

---

[16] The jury, given the option to determine which parent should have the ability to determine the children's primary residence, chose not to answer that question (under Jury Question 4). No one objected to the jury charge as submitted. And the parties do not assert jury charge error on appeal. Indeed, in her reply brief, Claudia argues that "[c]ontrary to [Isaac's] assertions, [Claudia] has not raised an argument regarding charge error."

27

consider issues of access and possession. Such matters are outside the province of the jury. *See* TEX. FAM. CODE § 105.002(c)(2)(B) ("[T]he court may not submit to the jury questions on the issue[] of . . . a specific term or condition of possession of or access to the child[.]").[17] And the trial court is afforded wide latitude in determining issues of access and possession. *See Escalante,* 632 S.W.3d at 580–81.

> In the Reformed Order, the trial court held that

> in crafting possession and access orders, [it] took into consideration several considerations, including the fact that [Claudia] moved over an hour away from [Isaac] rendering a standard possession order, including overnights during the schooltime, virtually impossible. So, the Court finds that the following orders are in the best interest of the children: Neither parent is granted the exclusive right to determine the residence of the children, which complies with the verdict of the jury. [Claudia] is granted a standard possession order that is not expanded. The Court finds that it is not in the best interest of the children for Mom to be granted an expanded standard possession order. All of the other portions of the rendition will remain the same . . . .

---

[17] *See In re S.H.*, 590 S.W.3d 588, 594 (Tex. App.—El Paso 2019, pet. denied) (observing that "the specific terms and conditions of possession of or access to a child are distinct from the determination of which parent has the exclusive right to designate the child's primary residence. In fact, while the latter issue may be submitted to a jury, a trial court is statutorily prohibited from submitting the former issue. . . . Thus, the specific terms and conditions of possession and access are for the court alone.") (citing TEX. FAM. CODE § 153.002(c)(1)(D), (2)(B)). There is a rebuttable presumption that a standard possession order "(1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator and is (2) in the best interest of the child." *In re Collier*, 419 S.W.3d 390, 398 (Tex.—Amarillo 2011, no pet.) (citing TEX. FAM. CODE § 153.252).

Claudia does not challenge the sufficiency of the evidence supporting the trial court's possession and access order. Her challenge is limited to her argument that the trial court's possession order is an abuse of discretion because the order contravenes the jury's verdict.

Because the jury did not award *any* parent the exclusive right to designate the primary residence of the children, there was no finding on residency to contravene. *See* TEX. FAM. CODE §105.002(c) (enumerating issues that, if decided by jury, may not be contravened by trial judge). We hold the trial court did not abuse its discretion in awarding Claudia a standard possession order and ordering her to pay child support.

We overrule Claudia's second issue.

## Conclusion

We hold the Reformed Order is not void, and affirm the Reformed Order.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.

29